Thomas E. MARTIN, Plaintiff,

v.

GENERAL DYNAMICS LONG TERM
DISABILITY BENEFITS PLAN,
et al., Defendants.

No. 4:95–CV–182–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

Jan. 24, 1996.

David Fielding, Wendy Ruth Wilson, Fielding Barrett & Taylor, Fort Worth, TX, for Thomas E. Martin.

Albon O'Neal Head, Jr., Jackson & Walker, Fort Worth, TX, Craig C. Martin, Christine Sgarlata Chung, Jenner & Block, Chicago, IL, for General Dynamics Long Term Disability Benefits Plan, General Dynamics Corp. and Aetna Life Ins. Co.

Steven Wayne Sloan, Thompson & Knight, Dallas, TX, for Lockheed Corporation.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

Came on for consideration the motion for summary judgment filed by defendants General Dynamics Long Term Disability Plan ("the Plan"), General Dynamics Corporation ("General Dynamics"), and Aetna Life Insurance Company ("Aetna"), (collectively "movants") to which plaintiff, Thomas E. Martin ("Martin"), has filed a response in opposition, and the motion for summary judgment filed by Lockheed Corporation ("Lockheed"), which is now moot since the dismissal of plaintiff's claims against Lockheed on January 12, 1996.

### I. Background

Martin is a former employee of General Dynamics. At some point during 1990, while he still was employed by General Dynamics, Martin became disabled due to a back injury he sustained at work on or about April 18, 1990, and/or emotional problems he had been experiencing for several years. Martin applied for, and began receiving, workers' compensation benefits and Social Security benefits. On December 4, 1990, Martin also applied for long term disability benefits ("LTD benefits") under the Plan, stating he was "unable to continue employment" due to "physical & mental limitations due to stress." Movants' Ex. E, at A000149. Although the Plan began paying LTD benefits to Martin, the Plan deducted from the LTD benefits the amount of Martin's workers' compensation benefits and Social Security benefits. Martin brought suit against defendants under 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), and 1104(a) ("ERISA"), claiming that defendants were improperly calculating his benefits under the Plan.

Under the Plan, a participant is "totally disabled" and potentially eligible for LTD benefits if he is "unable during the first 18 months of any period of continuous disability to perform the duties of his occupation" because of "injury or illness." Movants' Ex. B, at GD000049. Participants who are totally disabled become eligible to receive LTD benefits at the conclusion of a 26-week "qualifying period." *Id.* at GD000055. The Plan defines "qualifying period" as

a period of 26 consecutive weeks of Total Disability during which the Participant was eligible under the Plan and during which benefits may be payable to him under an Accident and Sickness Plan of an Employing Unit, or under the Workers' Compensation Act, or any combination thereof.

*Id.* at GD000047. The Plan further provides that eligible participants receive a monthly LTD benefit that is equal to a percentage of monthly earnings, less "other monthly income benefits." *Id.* at GD000056–58. The definition of "other monthly income benefits" includes both workers' compensation benefits and Social Security benefits, unless participant was receiving such benefits immediately prior to the commencement of the period of total disability. *Id.* at GD000057–58. More specifically, the Plan provides as follows:

4.4 *Other Monthly Income Benefits*

For the purposes hereof "Other Monthly Income Benefits" shall mean the following:

. . . .

(c) Receipt or entitlement to disability, retirement or employment benefits provided for under any law of a government based upon timely pursuit of claim thereof; for example, *workers' compensation benefits* or *any amount payable under Federal Social Security Act.*

. . . .

Benefits payable to the Participant . . . by reason of the Participant's disability or retirement shall be included as Other Income Benefits. *If, immediately prior to the commencement of the period of total disability, the Participant was receiving disability or retirement benefits, any such benefits, at the level at which he was then receiving them, shall not be included as Other Income Benefits.*

*Id.* (emphasis added).

## II. *The Motion and Response*

Movants contend that they were required by the terms of the Plan to deduct Martin's workers' compensation benefits and Social Security benefits from his LTD benefits, because he was not receiving such benefits immediately prior to the commencement of the period of his total disability. They maintain that Martin's period of disability began May 10, 1990, the day Martin stopped reporting for work. They assert that it was on this date that Martin became unable to perform the duties of his occupation because of injury or illness. Movants contend that Martin was neither receiving, nor eligible to receive, Social Security benefits immediately prior to May 10, 1990, and that Martin did not receive Social Security benefits until approximately January 1992, retroactive to May 10, 1990, with a first payment date of November 1990. Movants further assert that Martin was neither receiving, nor eligible to receive, workers' compensation benefits immediately prior to May 10, 1990, and that Martin did not receive workers' compensation benefits until July 1990, retroactive to May 10, 1990, with a first payment date of approximately May 31, 1990. Finally, movants note that they have not been deducting from Martin's LTD benefits his military pension or his Veterans Administration disability benefits, both of which he began receiving in December 1988, well before the commencement of his disability.

Martin argues in response that movants improperly deducted his workers' compensation benefits and Social Security benefits, because he was receiving such benefits immediately prior to the commencement of the period of his total disability. He does not dispute that he stopped coming to work on May 10, 1990, but denies that he became disabled on that date. He explains his situation as follows:

Martin was not "totally disabled" under the terms of the Plan, due to his depression, on May 10, 1990. Martin took sick leave in May 1990 due to his on-the-job

back injury. His depression, the condition for which he sought LTD benefits, did not become disabling until approximately July 15, 1990.

Response, at 6 (citations omitted). Martin asserts that from May 10, 1990, until approximately August 5, 1990, he was taking sick leave days. He states that he began the 26–week qualifying period on August 5, 1990, and that from August 5, 1990, until January 31, 1991, he received Accident and Sickness benefits, which are not LTD benefits. He further states that he did not qualify for LTD benefits under the Plan until February 1, 1991, when the qualifying period ended.

The parties' dispute boils down to a question of the date upon which Martin became totally disabled. If he became disabled on May 10, 1990, then, by the terms of the policy, it is proper for movants to deduct Martin's workers' compensation benefits and Social Security benefits from his LTD benefits.

### III. *Applicable Summary Judgment Principles*

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2509. The movant may discharge this burden by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256, 106 S.Ct. at

2510, 2514. An issue is material only if its resolution could affect the outcome of the action. *Id.* at 248, 106 S.Ct. at 2510. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir.1984).

The Fifth Circuit explained the burden placed on the nonmovant:

> When the nonmovant fails to make a sufficient showing on an essential element of her case, the moving party is entitled to summary judgment "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."

*McKee v. City of Rockwall, Texas*, 877 F.2d 409, 414–15 (5th Cir.1989) (quoting *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–53), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 727, 107 L.Ed.2d 746 (1990).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552–53. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597, 106 S.Ct. at 1361–62.

### IV. *Analysis*

The court reviews movants' benefits determination under an abuse of discretion standard. *Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1553, 1562 (5th Cir.1991), *cert. denied*, 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). The court will not overturn movants' benefits determination unless movants acted arbitrarily or capriciously in determining that Martin was disabled as of May 10, 1990. *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 601 (5th Cir. 1994).

There is no dispute that Martin stopped reporting for work on May 10, 1990. Martin stated in his application for LTD benefits that the date he last worked was May 10, 1990. Movants' Ex. E, at A000149. The Aetna field representative, Tom Tawyer ("Tawyer"), who interviewed Martin reported that Martin told him that stress, combined with his inability to concentrate at work,

forced him to cease working on May 10, 1990. Movants' Ex. F., at A000126. The Social Security decision regarding Martin's claim for benefits held that Martin did not return to work after May 10, 1990. Movants' Ex. G, at A000091. Martin's response to movants' motion for summary judgment also affirms, albeit tacitly, that Martin did not report to work on or after May 10, 1990. *See* Response, at 4–6.

Movants also provide evidence indicating that Martin suffered from his physical and mental problems prior to May 10, 1990. A psychiatrist's[1] report, which diagnoses Martin with depression, shows the date of Martin's first visit as January 29, 1990. Movants' Ex. I, at A000153. A neurosurgeon's report dated December 11, 1990, regarding treatment for "anterior interbody discectomy & fusion C6–7," indicates that Martin's symptoms first appeared in 1988. Movants' Ex. J, at A000133–34. A urologist's report dated February 7, 1991, which diagnoses Martin with impotence and prostatitis, and which states that stress could exacerbate Martin's difficulties, reflects that Martin's symptoms first appeared on April 26, 1990. Movants' Ex. K, at A000160–61. Furthermore, Tawyer reported that Martin stated that he had suffered from "stress and extreme tiredness" since late 1989, and that in April 1990 he suffered a back injury which resulted in a herniated disk. Movants' Ex. F, at A000125.

Finally, there is evidence indicating that both Martin's workers' compensation benefits and Social Security benefits were awarded retroactive to May 10, 1990. Movants' Ex. G, at A000094; Movants' Ex. X, at A000032. The Administrative Law Judge who decided that Martin was entitled to Social Security benefits commencing May 10, 1990, made the following findings:

1. The claimant met the disability insured status requirements of the Act on *May 10, 1990, the date the claimant stated that he became unable to work,* and continues to meet them through December 31, 1994.

2. The claimant has not engaged in substantial gainful activity since *May 10, 1990.*

3. The medical evidence establishes that the claimant has *severe depression* (major episode, recurrent).

. . . .

4. The claimant has been under a "disability," as defined in the Social Security Act, since *May 10, 1990*

. . . .

Movants' Ex. G, at A000093 (emphasis added).

In response to the evidence that he ceased working on May 10, 1990, Martin argues that, although he may have stopped working on that date, he was just out on sickleave, and not actually disabled, until sometime in July. The problem with Martin's argument is that, under the Plan, he was defined as "totally disabled" once, "because of injury or illness" he was "unable . . . to perform the duties of his occupation." Movants' Ex. B, at GD000049. Whether or not Martin's time was charged to sickleave, *see* Plaintiff's Ex. 2, the fact remains that, as of May 10, 1990, injury or illness prevented Martin from performing the duties of his occupation.

Martin also contends that it was his back injury that prevented him from going to work from May 10, 1990, until sometime in July, 1990, but that his depression, the condition for which he sought LTD benefits, did not become disabling until approximately July 15, 1990. Martin's contention is undercut by Tawyer's report that Martin stated that stress, combined with his inability to concentrate at work, forced him to cease working on May 10, 1990. Movants' Ex. F., at A000125–26. Martin's contention is further weakened by the Social Security decision which found that Martin had stated May 10, 1990, to be the date he became unable to work, and which found depression to be the basis of Martin's disability. Movants' Ex. G, at A000092–93. Furthermore, Martin again misapprehends the Plan. Under the Plan, he was defined as "totally disabled" once, "because of injury or illness" he was "unable . . . to perform the duties of his occupation." Movants' Ex. B, at GD000049. Whether or not the injury that caused his absence from May 10, 1990, until sometime in July, 1990, is

---

1. The report does not reflect that Dr. Bonham is a psychiatrist, *see* Movants' Ex. I, but an Aetna internal memo does, *see* Movants' Ex. F, at A000125.

the same injury for which Martin sought LTD benefits, the fact remains that, as of May 10, 1990, injury or illness prevented Martin from performing the duties of his occupation.

A couple of doctors' reports tend to support Martin's assertion he did not become disabled until sometime after May 10, 1990. The psychiatrist's report shows July 15, 1990, as the date on which Martin ceased work because of disability. Movants' Ex. I, at A000153. The neurosurgeon's report dated December 11, 1990, shows November 1, 1990, as the date on which Martin ceased work because of disability. Movants' Ex. J, at A000133. However, these reports cannot overcome the fact that, beginning May 10, 1990, illness or injury prevented Martin from performing his occupation.

Based on the summary judgment evidence, which amply supports the conclusion that as of May 10, 1990, Martin was unable, due to injury or illness, to perform the duties of his occupation, the court cannot find that movants acted arbitrarily or capriciously in determining that Martin's disability began May 10, 1990. There is no summary judgment evidence that it so acted. Furthermore, in light of the terms of the Plan, the court cannot find that, given May 10, 1990, as the date Martin became totally disabled, movants acted arbitrarily or capriciously in deciding that Martin's workers' compensation benefits and Social Security benefits should be deducted from his LTD benefits. There is no summary judgment evidence that they so acted. Therefore, the court does not find there is any genuine issue for trial, and the court concludes that movants' motion for summary judgment should be granted. Accordingly,

## V. Order

The court ORDERS that movants' motion for summary judgment be, and is hereby, granted, and that Martin's claims against movants be, and are hereby, dismissed. The court further ORDERS that Lockheed's motion for summary judgment be, and is hereby, denied as moot.