**Avery DOUGLAS, Plaintiff–Appellant,**

v.

**GENERAL DYNAMICS LONG TERM DISABILITY PLAN, Defendant–Appellee.**

No. 00–2431.

United States Court of Appeals, Sixth Circuit.

Aug. 7, 2002.

Before COLE and GILMAN, Circuit Judges; MILLS, District Judge.*

OPINION

RICHARD MILLS, District Judge.

In the instant appeal, Avery Douglas contends that the General Dynamics Long Term Disability Plan violated his rights under the Employee Retirement Income Security Act when it stopped paying him long term disability benefits that he had been receiving from it for four years. The General Dynamics Long Term Disability Plan asserts that it discontinued paying Douglas long term disability benefits after receiving documentation that he was no longer "totally disabled" as that phrase is used in the long term disability plan and in the summary plan description.

After reviewing the administrative record, the district court concluded that the General Dynamics Long Term Disability Plan Administrator's decision to discontinue paying Douglas long term disability benefits was not arbitrary and capricious. Accordingly, the district court denied Douglas' motion to reinstate his long term disability benefits and granted the General Dynamics Long Term Disability Plan's motion to affirm the Plan Administrator's decision to deny Douglas' claim for further long term disability benefits.

For the reasons set forth below, we AFFIRM the judgment of the district court.

I.  BACKGROUND

Avery Douglas began working for General Dynamics Land Systems ("General Dynamics") in September 1968. During his tenure with General Dynamics, Douglas worked as an hourly employee, as a supervisor, as an inspector, and, finally, as an auditor.

In 1993, Douglas learned that General Dynamics was reorganizing his work area and that he would, most likely, be laid off. On September 8, 1993, Douglas stopped coming to work, complaining of depression. On September 19, 1993, Douglas started receiving long term disability benefits from the General Dynamics Long Term Disability Plan ("the Plan").[1]

Pursuant to its terms, the Plan would, periodically, require additional medical evidence sustaining a claimant's total disability. Accordingly, in early 1997, the Plan asked Dr. Jacob Zvirbulis to conduct an evaluation of Douglas. On March 18, 1997, Dr. Zvirbulis performed a psychiatric eval-

---

* The Honorable Richard Mills, Senior United States District Judge for the Central District of Illinois, sitting by designation.

1.  The Plan retained the Aetna Heath Insurance Company to process the payments of its long term disability benefits claims.

uation of Douglas. On April 23, 1997, Dr. Zvirbulis issued a report in which he concluded that Douglas was not totally disabled because Douglas had the capacity to work in similar industries despite his depression.[2] Based upon Dr. Zvirbulis' report, the Plan notified Douglas that he was no longer eligible to receive long term disability benefits because he was not "totally disabled" from working as that phrase is defined in the summary plan description.

After receiving the notice regarding the termination of his long term disability benefits, Douglas, through counsel, filed an administrative appeal challenging the denial of his long term disability benefits. As part of the record on his administrative appeal, Douglas enclosed a report from his treating physician, Dr. Ahmad Kafi, in which Dr. Kafi opined that Douglas was totally disabled due to a major depressive disorder. Dr. Kafi also opined that Dr. Zvirbulis' conclusions were faulty because he diagnosed Douglas' problems as stemming from anger and resentment rather than as a major depressive disorder.

Due to the two conflicting evaluations, the Plan arranged for a third evaluation of Douglas by Dr. Richard S. Jackson. On October 6, 1998, Dr. Jackson conducted a standard psychiatric evaluation of Douglas.[3] After the evaluation, Dr. Jackson concluded that Douglas had "difficulties with anger and hostility related to various conflicts in his employment." Although

Dr. Jackson noted that Douglas should not return to his former job, he stated that "this [opinion] would not be part of a specific psychiatric disability." Accordingly, Dr. Jackson determined that, from a psychiatric standpoint, Douglas was not totally disabled from working.

On December 3, 1998, the Employee Benefits Appeal Committee ("the Committee") met to consider Douglas' administrative appeal. Based upon the administrative record before it (i.e., the plan, the summary plan description, and the three psychiatric reports), the Committee concluded that Douglas was not prevented from doing any work for which he was or could reasonably become fitted by education, training, or experience. Therefore, the Committee found that Douglas was not eligible to continue receiving long term disability benefits. The Committee informed Douglas, through his attorney, of this decision by letter dated December 15, 1998.

On January 6, 1999, Douglas filed a Complaint in federal district court against the Plan alleging that it had wrongfully terminated his long term disability benefits in violation of his rights under the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1001 et seq. On May 27, 2000, the Plan filed a motion asking the district court to affirm the Plan Administrator's decision to deny Douglas' request for reinstatement of his long term disability benefits on the ground that the

2. The summary plan description provides that participants are eligible to receive long term disability benefits if they cannot work "at any job for which [they are], or could reasonably become, fitted by education, training or experience." In addition, participants are not eligible to receive long term disability benefits if they "fail to furnish required proof of disability and its continuance [or] refuse to be examined by the Plan Administrator's physician. . . ."

3. During his evaluation, Douglas informed Dr. Jackson that he had stopped working because he had become depressed. Douglas mentioned several difficulties which he had had with some employees and supervisors at General Dynamics and informed Dr. Jackson of his belief that those people had "f* * * *d me over." Douglas also indicated that, if he returned to his former job with General Dynamics, he might hurt someone there.

Plan Administrator's decision was not arbitrary and capricious.[4] In response, Douglas filed a motion on July 10, 2000, asking the district court to reinstate to him the long term disability benefits that he had previously been receiving. On October 17, 2000, the district court entered an order granting the Plan's motion, denying Douglas' motion, and entering judgment on behalf of the Plan. On November 16, 2000, Douglas filed a timely notice of appeal from this order with this Court.

## II. DISCUSSION

### A. *ARGUMENTS*

#### 1. *Douglas*

Douglas proffers four arguments in support of his position that the district court's order affirming the denial of his request for the reinstatement of his long term disability benefits should be reversed.

*First,* Douglas argues that, in order for the Plan to deny his claim for long term disability benefits, the Plan should be required to offer evidence of the type of work that he can perform given his disability. Douglas acknowledges that the definition of "disability" contained within the summary plan description provides that a participant is considered to be disabled if, after eighteen months, he cannot perform any work for which he is or could reasonably become fitted by education, training, or experience.

However, Douglas claims that the Plan disregarded Dr. Kafi's opinion that he is "disabled" as that term is used in the summary plan description. In addition, Douglas contends that the Plan should be required to offer evidence akin to that of a vocational expert as used in claims for Social Security Disability benefits (*i.e.*, evidence as to the type of job(s) he can perform given his disability) before the Plan may deny his claim for long term disability benefits based upon a finding that he is not totally disabled from performing any work. Because the Plan offered no such evidence, Douglas asserts that the district court's decision must be reversed.

*Second,* Douglas argues that, because he is receiving Social Security Disability benefits, he must, according to the terms of the summary plan description, also receive long term disability benefits from the Plan. Douglas asserts that, based upon the plain language of the summary plan description, once he began receiving Social Security Disability benefits, his claim for long term disability benefits should have been automatically approved.

*Third,* Douglas asserts that, under ERISA, a treating physician's opinion must be given greater weight than an examiner's opinion. Because his treating physician, Dr. Kafi, opined that he was disabled, Douglas contends that the Plan and the district court erred in relying on the two independent examiners' opinions to the contrary. In addition, Douglas claims that Dr. Zvirbulis' and Dr. Jackson's examinations were not as thorough as Dr. Kafi's and that their opinions contain serious flaws. Thus, Douglas asserts that the district court erred in not relying exclusively upon Dr. Kafi's opinion that he is disabled in reaching its decision in this case.

*Fourth,* Douglas argues that, because the summary plan description governs in this case, the district court should have reviewed the Plan Administrator's decision under a *de novo* standard of review rather than under an arbitrary and capricious standard of review. Douglas asserts that, if a *de novo* standard of review is em-

---

4. General Dynamics is the Plan Administrator     for the Plan.

ployed, it becomes clear, based upon the evidence, that he should receive long term disability benefits from the Plan. Accordingly, Douglas asks the Court to reverse the district court's order and to order the reinstatement of his long term disability benefits.

### 2. *The Plan*

The Plan argues that Douglas' appeal misses the mark as to all four of his arguments. *First,* with regard to the appropriate standard of review, the Plan asserts that the plain language of the Plan gives the Plan Administrator the discretion to grant or deny claims for benefits, and therefore, the arbitrary and capricious standard of review should be applied by the district court and by this Court. *Second,* because the Plan Administrator possessed two independent medical examiners' opinions which concluded that Douglas was not totally disabled, the Plan claims that the decision to discontinue Douglas' long term disability benefits cannot be said to have been arbitrary and capricious.

*Third,* the Plan contends that the plain language of the plan does not require Douglas to receive long term disability benefits just because he has been found to qualify for Social Security Disability benefits. On the contrary, the Plan argues that the Plan's language is clear that, if a claimant such as Douglas is either no longer disabled or has failed to prove a disability, long term disability benefits cease without regard to the claimant's continued collection of any Social Security Disability benefits. *Fourth,* the Plan asserts that Douglas' reliance upon Social Security case law, his argument that a vocational expert must testify about the type of jobs available to him before the Plan may terminate his long term disability benefits, and his invocation of the "treating physician" rule are inapposite because this is an ERISA case,

not a Social Security case. Accordingly, the Plan asks the Court to affirm the district court's decision.

### B. *ANALYSIS*

■ This Court has previously explained:

> As a general principle of ERISA law, federal courts review a plan administrator's denial of benefits *de novo,* "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 613 (6th Cir.1998)(*citing Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). When a plan administrator has discretionary authority to determine benefits, we will review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996).

*Sanford v. Harvard Indus., Inc.,* 262 F.3d 590, 595 (6th Cir.2001). "[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Williams v. International Paper Co.,* 227 F.3d 706, 712 (6th Cir.2000)(internal citations and quotations omitted). We review the district court's determination of the proper standard of review *de novo. Tiemeyer v. Community Mut. Ins. Co.,* 8 F.3d 1094, 1099 (6th Cir. 1993).

In the instant case, the clear language of the Plan and the summary plan description refutes the assertions tendered by Douglas. The plain language of the Plan clearly gives the Plan Administrator the discretion to determine eligibility for benefits and/or to construe the terms of the Plan.[5] For example, the Plan expressly provides: "The [Plan] Administrator's good faith discretionary actions shall be final and conclusive on all persons claiming Benefits Coverages under the Plan...."

In addition, the Plan also confers authority upon the Plan Administrator to act as a finder of fact, and the summary plan description states that the Plan Administrator "sets general policy on how [the Plan] is operated ...." *See Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health and Welfare Trust Fund*, 203 F.3d 926, 933 (6th Cir.2000)(finding discretionary authority where the plan provided the plan administrator with "primary responsibility" for the decisions regarding benefit claims); *see also Johnson v. Eaton Corp.*, 970 F.2d 1569, 1571–72 (6th Cir.1992)(finding discretionary authority where the plan provided that the plan administrator's decisions were "the final disposition" of benefits claims). As such, the arbitrary and capricious standard of review applies.[6] *See Firestone Tire & Rubber Co. v. Bruch*, 489

U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)(holding that "[a] trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable."); *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir.1998)(*en banc*)(holding that the arbitrary and capricious standard of review applies where there is a clear grant of discretion to the plan administrator); *see also Martin v. General Dynamics Long Term Disability Plan*, 917 F.Supp. 475, 477 (N.D.Tex.1996)(interpreting the identical plan at issue in this case and holding that when reviewing benefits decisions under "the General Dynamics Long Term Disability Plan," the court "will not overturn [the] benefits determination unless [the plan administrator] acted arbitrarily or capriciously.").

Because the Plan Administrator received opinions from two independent medical evaluators which concluded that Douglas was not disabled because he could perform some work, the district court correctly held that the Plan Administrator's decision to discontinue paying Douglas long term disability benefits was not arbitrary and capricious. *See Abnathya v. Hoffmann–LaRoche, Inc.*, 2 F.3d 40, 47 (3d Cir.1993)(holding that a plan adminis-

---

**5.** Douglas' arguments that the Plan does not confer discretion upon the Plan Administrator and that the summary plan description *ipso facto* requires the payment of long term disability benefits to any claimant who qualifies for Social Security Disability benefits do not find any support within the language of the Plan or the summary plan description.

**6.** At oral argument, Douglas' counsel asked the Court not to merely rubber stamp the insurance company's limited and narrow view regarding which participants are entitled to receive ERISA benefits. Specifically, Douglas' counsel asked the Court to flesh out and to define what constitutes an arbitrary

and capricious decision by a plan administrator. However, this Court has previously done so on numerous occasions. *E.g. Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 710 (6th Cir.2000), *quoting Davis v. Kentucky Fin. Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir.1989)(noting that " '[t]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.' "); *Williams*, 227 F.3d at 712 (same); *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997)(same).

trator may rely upon a single medical opinion finding that an employee is not disabled); *see also Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 380 (7th Cir.1994)(upholding a plan administrator's denial of benefits where a psychiatrist found the employee to be "severely depressed" where there was insufficient evidence to "support the conclusion that [the plaintiff's] depression, regardless of treatment, would constitute a total disability" and upholding a plan administrator's denial of a claim where an independent medical consultant's opinion was contrary to the plaintiff's doctor's opinion); *see also Birdsell v. United Parcel Serv. of Am.,* 94 F.3d 1130, 1133 (8th Cir.1996) (holding that a plan administrator's decision to deny benefits was not arbitrary or capricious simply because the plan administrator adopted one of two competing views). Moreover, Douglas' claim that we should apply the *de novo* standard of review because neither the plan nor the summary plan description employs the word "discretion" is inapposite. *See Administrative Comm. of the Sea Ray Employees' Stock Ownership and Profit Sharing Plan v. Robinson,* 164 F.3d 981, 986 (6th Cir.1999)(noting that "discretionary authority does not hinge on incantation of the word 'discretion' or any other 'magic word'.")(internal citations omitted).

Finally, Douglas' reliance upon case law interpreting the Social Security Act (specifically his request that this Court require an ERISA plan to offer testimony from a vocational expert to testify as to what type of job a claimant can perform and his request that this Court require ERISA plan administrators to give greater weight to a treating physician's opinion over that of an independent examiner) is misplaced. Douglas has failed to cite any authority in support of his arguments, and the Court has been unable to find any through its own research. In fact, all of the case law cited by the Plan and unearthed by the Court reaches a conclusion opposite to that proposed by Douglas. *E.g., Conley v. Pitney Bowes,* 176 F.3d 1044, 1050 (8th Cir.1999)(holding that the procedure of using vocational experts "is the special creature of social security ... and has no relevance to [an ERISA benefits] case."); *see Block v. Pitney Bowes,* 952 F.2d 1450, 1455 (D.C.Cir.1992)(holding that the plan administrator was not required to consider vocational evidence before making a final eligibility decision); *see also Jett v. Blue Cross and Blue Shield of Alabama,* 890 F.2d 1137, 1140 (11th Cir.1989)(holding that "[t]he Social Security law that greater weight must be given to the opinion of the treating physician is not applicable to the decision of [an ERISA plan administrator]."); *see also Jackson v. Metropolitan Life,* 24 Fed.Appx. 290, 291 (6th Cir.2001)(holding that "[a] treating physician's opinion is not entitled to greater weight in the ERISA context.")(unpublished opinion); *see also Delta Family–Care Disability and Survivorship Plan v. Marshall,* 258 F.3d 834, 841 (8th Cir.2001)(stating that the district court incorrectly reasoned that the plan administrator should have accorded greater deference to the opinions of beneficiary's treating physicians).

Furthermore, Douglas has presented no evidence that he was prevented, either on his administrative appeal or before the district court, from presenting the testimony of a vocational expert. Even assuming, *arguendo,* that the Plan Administrator should have considered testimony from a vocational expert regarding what type(s) of employment Douglas could have performed given his disability before denying his claim for benefits, there is no requirement (even in the Social Security context) that the Plan had to bear the costs associated with obtaining a vocational expert's testimony and opinion. *See Key v. Callahan,* 109 F.3d 270, 274 (6th Cir.1997)(hold-

ing that "the Commissioner may, but is not required to, use the services of a vocational expert"); *see also* R. Michael Booker, *A Guide to the Effective Use of Vocational Experts in Social Security Disability Hearings*, AM. J. TRIAL ADVOC., Fall 1985, at 239 ("The administrative law judge determines whether to use a vocational expert. The claimant's attorney can request that the judge secure the services of a vocational expert or retain and pay the expert himself.").

## III. CONCLUSION

Accordingly, for the reasons set forth above, we AFFIRM the judgment of the district court.