**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0174n.06

Case No. 16-2028

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 22, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LES A. GILEWSKI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| PROVIDENT LIFE AND ACCIDENT | ) | MICHIGAN |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____/ | | |

**Before: MERRITT, COOK, and McKEAGUE, Circuit Judges.**

**MERRITT, Circuit Judge.** Plaintiff Les Gilewski brought a declaratory judgment action against defendant Provident Life and Accident Insurance Company pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B), alleging wrongful termination of long-term disability benefits and seeking reinstatement of those benefits. Gilewski suffered from depression and, at the age of 41, applied for benefits under two long-term disability policies he held with Provident. Provident paid benefits under one policy for the two-year duration of its term and those benefits are not at issue in this appeal. Provident also paid benefits under the second policy, but, after four years, it terminated the benefits after it determined that Gilewski was "able to perform the duties of his occupation" and was no longer

disabled under the terms of the policy. After exhausting Provident's administrative appeals, Gilewski brought this action against Provident. The district court granted judgment on the administrative record to Provident. For the following reasons, we affirm.

## I. FACTS AND HISTORY

Gilewski, born in 1968, was the owner and president of Radiance Mold and Engineering, Inc., an auto supplier in Michigan, for 20 years. At one time the business employed as many as 100 people. In 2001, Gilweski's son was born with cerebral palsy, putting a strain on his family and work life. Gilewski also started experiencing marital difficulties that year. By the mid-2000s, Gilewski was losing customers and sales personnel due to his personal struggles. Gilewski's business experienced further downturn during the recession that began in 2008, and the business was put into bankruptcy and liquidated in the spring of 2009. Gilewski began experiencing depression, culminating in his hospitalization for one week in June 2009 when he became suicidal. Gilewski left the hospital under the care of Dr. Dan Guyer, who prescribed medications for Gilewski. Gilewski was also under the care of a psychologist, Dr. Fred Roberts, with whom he had weekly therapy sessions. Gilewski's doctors determined he could not work, and he filed for long-term disability pursuant to two disability insurance policies he had previously purchased from Provident, citing his medical condition as anxiety and depression. When he applied for benefits, Gilewski included a statement from his treating psychiatrist, Dr. Guyer, which stated that Gilewski suffered from major depression and was unable to work. Dr. Guyer further noted that he expected to see improvement in six to twelve months. Provident began paying benefits effective June 2009 and continued until July 2013 when Provident determined that Gilewski was able to return to his previous occupation.

The first policy, which provided 24 months of disability benefits, is not at issue in this case. The second policy requires Provident to pay monthly benefits to a participant who satisfies various conditions, including being disabled within the meaning of the term as defined by the policy. The policy states:

> Disability, or disabled, means that, due solely to Injuries or Sickness:
>
> 1. you have a Loss of Time or Duties in your occupation; and
>
> 2. you have a Loss of Earnings of at least 20%.
> . . .
>
> Loss of Time or Duties means that:
>
> 1. you are not able to perform one or more of the substantial and material duties of your occupation; or
>
> 2. you are not able to perform the substantial and material duties of your occupation for as much time as you regularly performed them before you became disabled.
> . . .
>
> Your occupation means the occupation . . . in which you are regularly engaged at the time you become disabled.

Policy at 5-7 (emphasis omitted).

**<u>2009-2011</u>**

Provident paid Gilewski all available benefits under the first policy. Provident initially denied Gilewski's claim under the second policy because it determined that Gilewski had negative earnings during the years preceding his disability onset date and therefore had not sustained a 20-percent earnings loss as required under the policy. Provident later reconsidered that determination, however, and paid all past due benefits. That dispute was resolved and is not at issue in this appeal.

Provident received periodic updates from Gilewski's treating health-care professionals. On January 5, 2010, Gilewski's treating psychologist, Dr. Roberts, submitted documentation to Provident noting that Gilewski's depression had been severe in June 2009, but had improved to moderate by October 2009. Dr. Roberts estimated that it was likely Gilewski would be ready to work at least part-time by June 2010. In June 2011, Dr. Roberts submitted another report stating that Gilewski was less depressed and feeling more hopeful about the future, but noting that it would continue to be too stressful for Gilewski to run a large company.

**2011-2013**

In November 2010, Gilewski underwent a forensic psychiatric examination as part of his bankruptcy proceeding. He was examined by Dr. Gerald Shiener, a board certified psychiatrist. Dr. Shiener diagnosed Gilewski with "Major depression, recurrent and chronic," and concluded that Gilewski's "current condition is incompatible with any sort of competitive employment." Because Dr. Shiener was not one of Gilewski's regular treating physicians at this time, his initial report was not sent to Provident at the time it was created. Gilewski, however, began to see Dr. Shiener monthly after November 2010. Dr. Shiener began providing regular attending physician statements to Provident in June 2011. However, the statements were simply photocopies of previous statements with only the date changed, noting Gilewski's diagnosis of "major depression," stating that he cannot work and that it "cannot [be] determined" when he will be able to return to work. Gilewski stopped seeing Dr. Roberts in May 2011 and it appears that Dr. Shiener became Gilewski's sole treating physician for his depressive disorder. Dr. Robert's last treatment note, dated May 12, 2011, indicated that Gilewski was noticing "more energy" and "was better able to think clearly" after a change in his medications.

In early 2012, Provident began requesting further documentation from Dr. Shiener about Gilewski's current condition and prognosis. Dr. Shiener had been Gilewski's treating physician for a year, and he had provided Provident only with photocopies of the same attending physician statement with the date changed each month. Provident sent a letter to Dr. Shiener on June 21, 2012, stating that it had sent him four previous requests for "additional information." On June 18, 2012, Dr. Shiener responded with a letter stating that it was his policy not to release the requested records because disclosure of sensitive personal information limits a patient's ability to participate in treatment. Dr. Shiener enclosed a copy of the narrative report he had sent to Gilewski's attorney on November 11, 2010, when he first examined Gilewski, and he said that Gilewski's condition "although stable is unimproved" and stated that Gilewski had "made an attempt to withdraw from antidepressant medication which led to a significant setback and reemergence of his depressive symptomatology."

On December 6, 2012, Provident sent a letter to Dr. Shiener requesting that, in light of his policy regarding the release of medical records, he provide the following: (1) a list of the dates he treated Gilewski; (2) Gilewksi's Global Assessment of Functioning score (referred to as the "GAF" score in the record)[1] every six months; and (3) a written summary of Gilewski's current condition, restrictions, and treatment plan, including medications. On February 20, 2013, Dr. Shiener responded with a letter stating that he had seen Gilewski monthly since November 2010,

---

[1]"Global Assessment of Functioning" is a simple ratings scale from the Diagnostic and Statistical Manual of Mental Disorders for evaluating how well a person is able to function and go about their life. The scale range is from 0 to 100, where higher scores indicate greater levels of functioning. Optimal mental health and coping capabilities are represented by scores in the 91–100 range. Persons with mild psychological problems fall in the 71–90 range. Severe problems fall in the 21 – 30 range and 1–10 is reserved for persistently suicidal persons or persons incapable of meeting even minimal personal hygiene standards. The GAF score is made as a standard part of all psychiatric/psychological diagnoses. A score between 51 and 60 means moderate symptoms of mental illness are present, or that a person's functioning in school, work, or social situations is moderately impaired. The Diagnostic and Statistical Manual of Mental Disorders provides some examples of moderate mental illness: Flat affect and circumstantial speech and occasional panic attacks. Examples of moderate functional impairments are few friends, and conflicts with peers or co-workers. The GAF is just one tool used by clinicians to develop the clinical picture. It cannot be used in isolation from the rest of the evidence to make a disability decision.

and he enclosed a services-rendered accounting ledger listing the dates of Gilewski's visits but no medical information. The letter further stated that Gilewksi's Global Assessment of Functioning score was 40 when the treatment relationship began and increased to 59 in late 2011, that it fell to 40 thereafter, and that it had stabilized at around 50 after an adjustment in Gilewski's medications. Finally, Dr. Shiener listed Gilewski's medications and described his treatment plan.

After reviewing Dr. Shiener's letter, Dr. John Szlyk, an in-house psychiatrist at Provident, spoke with Dr. Shiener about Gilewski's condition and treatment. After speaking with Dr. Shiener, Dr. Szlyk made a file notation observing that after four years of treatment, Gilewski still fluctuated in activity levels and symptoms. He noted that the duration of Gilewski's recovery had gone from a 6-12 month window in late 2009 and early 2010 to "uncertain" under Dr. Shiener's care. Based on this, Dr. Szlyk recommended that Provident obtain an independent medical examination "to clarify the insured's diagnostic formulation, to assess his recent functional status and current Behavioral Health-based R/L's, to provide recommendations for appropriate treatment, and to offer a timeframe for functional recovery with such care." Dr. Szlyk opined that after four years of treatment with only marginal gains reported that more "aggressive/intense" treatment was needed. Provident selected Dr. Calmeze Dudley, a board certified psychiatrist, to conduct the exam of Gilewski.

On June 19, 2013, Dr. Dudley examined Gilewski. Dr. Dudley diagnosed Gilewski with "Major Depressive Disorder, Unipolar, stabilized," and assigned him a Global Assessment of functioning score of 80. Dr. Dudley's independent psychiatric evaluation consisted of a history, mental status examination and record review. Dr. Dudley reported general improvement in sleep (8-9 hours per night) and increased energy despite some ongoing affective symptoms with

Gilewski reporting "good days and bad days." Dr. Dudley noted that Gilewski had recently restarted a regular exercise program consisting of gym workouts three to four times per week and weekly tennis with his attorney. Gilewski also reported to Dr. Dudley that he was able to spend time with close friends, enjoyed watching television and hunting, which he had done the previous winter, fishing, and taking family vacations to his parents' homes in Northern Michigan and Florida. Gilewski reported that he and his wife shared the home chores and the care of their severely disabled 11-year-old son. Gilewski stated that his mood would have to be more stable before trying to return to work and that he had anticipatory anxiety at the prospect. Dr. Dudley noted that Gilewski "continues to be maintained on antidepressant medication and by all accounts is doing relatively well." Dr. Dudley concluded that Gilewski did not require a psychiatric disability status and that he was able to return to work without restrictions. Based on Dr. Dudley's report, Provident's Dr. Szlyk concluded that Gilewski did not have restrictions or limitations that prevented him from returning to work. Dr. Szylk entered the following review of Dr. Dudley's examination into the administrative record on July 2, 2013:

> Medical Issue: Insured is a 44 year old Auto-Related Molding Shop Owner with a history of Major Depressive Disorder who claimed disability as of 6-2-2009. The insured has been engaged in Behavioral Health treatment over nearly 4 years with no report of his return to his former occupational duties. Questions have arisen regarding the insured's diagnostic formulation, the current level of support for Behavioral Health-based R/L's, his engagement in appropriate Behavioral Health treatment, and his prognosis for functional recovery with continued care. It has appeared Dr. Shiener has viewed the insured as more ill than other providers have,—and yet has provided less intensive Behavioral Health treatment as the insured has seemingly done less well. Given the limited information provided by Dr. Shiener as he had taken over the care of the insured in 2011, it has been difficult to reconcile his reports of the insured's doing poorly with a poor prognosis with other clinical information indicating the insured's clinical progress, increased activity level, and thoughts of developing a small business.

On July 12, 2013, Provident notified Gilewski that it would terminate his benefits based on its determination that he was able to perform the duties of his occupation. The termination

letter stated that Dr. Dudley noted a diagnosis of major depressive disorder that has been stabilized. The termination letter also noted that Dr. Dudley concluded that Gilewski was doing "relatively well" and should continue on antidepressants, and that he was probably at or near maximum medical recovery. Benefits Termination Letter at 2, dated July 12, 2013. The letter went on to explain that the medical information indicated that Gilewski is able to perform the duties of his occupation and benefits would cease.

On September 4, 2013, Dr. Shiener sent Provident a letter responding to Dr. Dudley's report. Dr. Shiener stated that he believed Dr. Dudley's assessment was incorrect, and that Gilewski was limited in his ability to take pleasure in activities and that his mood was markedly depressed. Dr. Shiener also noted that Dr. Dudley had limited experience in treating depressed patients. In an October 8, 2013, letter to Provident, Dr. Dudley responded to Dr. Shiener's criticisms. Dr. Dudley stated that Dr. Shiener's opinions were inconsistent with those rendered by Gilewski's previous medical providers, and that, if the diagnosis provided by Dr. Shiener was accurate, Gilewski would require "a more intensified treatment intervention." Finally, Dr. Dudley defended his qualifications to render an opinion, pointing out that he had 27 years of experience treating depressed patients. Thereafter, Provident informed Gilewski that it would not change its benefits decision in light of the additional information provided by Dr. Shiener and informed Gilewski of his right to appeal.

**Administrative Appeal**

On January 3, 2014, Gilewski appealed the termination of his benefits to Provident. Gilewski provided additional materials, including affidavits from family members describing his condition and activities, an affidavit from an executive in the automobile mold industry detailing the demands of that position, and a report from a vocational expert. Dr. Peter Brown, an

independent board certified psychiatrist hired by Provident, reviewed Gilewski's file for the appeal but did not conduct an independent medical examination. Dr. Brown concluded that Gilewski's medical information did not support any restrictions or limitations. Dr. Brown noted that, although it was difficult to assess Dr. Shiener's conclusions without medical records, Gilewski's course of treatment was not consistent with a severe and pervasive psychiatric impairment. Dr. Brown also found that the Dr. Dudley's independent examination was "comprehensive, thoughtful and consistent with professional standards."

On January 30, 2014, Provident notified Gilewski that it had affirmed its denial of benefits. The letter provided Provident's reasoning for denying the appeal:

> The [independent] examiner [Dr. Dudley] did not find evidence of occupationally precluding restrictions or limitations. He concluded that the current level of treatment is appropriate and consistent with a stable condition. He recommended ongoing treatment.
>
> The attending psychiatrist [Dr. Shiener] has consistently asserted Mr. Gilewski continues to have severe and pervasive psychiatric impairment. The lack of actual treatment records does limit capacity to value this assertion. However, the course of treatment with reportedly monthly psychotherapy and a relatively modest and predominantly stable regimen through mid-2013 is not consistent with the presence of severe and pervasive psychiatric impairment.

Appeal Denial Letter at 2-3, dated January 30, 2014. The letter stated that Gilewski's treatment records would be helpful in evaluating Dr. Shiener's conclusions, and that if those records were not available, Provident would review a summary that included changes in treatment and dates of medical services during 2013. Gilewski did not provide the suggested documents.

Following the denial of his appeal, Gilewski filed this action in district court seeking review of Provident's decision pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B). Gilewski alleged that Provident wrongly terminated his long-term benefits because the substantial weight of the evidence in the administrative record demonstrates

that he has an ongoing disability and is unable to work under the terms of the policy. After a *de novo* review of the record, the district court found that Gilewski was not disabled as defined by the policy and affirmed Provident's decision to terminate benefits. *Gilewski v. Provident Life and Accident Ins. Co.*, No. 1:15-CV-238, 2016 WL 3355555 (W.D. Mich. June 17, 2016). This appeal followed.

## II. ANALYSIS

The sole issue on appeal is whether the district court erred in holding that Provident's decision to terminate Gilewski's long-term disability benefits was supported by substantial evidence in the administrative record. Gilewski's primary complaint is that the Provident did not give enough weight to the opinion of his treating physician, Dr. Shiener, and relied instead on the opinions of nontreating psychiatrists, only one of whom had actually examined Gilewski. Gilewski also contends on appeal that the district court erred in not requiring Provident to consider the evidence submitted by Gilewski regarding a vocational expert who opined about the demands of Gilewski's occupation, and he also maintains that the administrative process was marred by a conflict of interest because Provident is both the decisionmaker and the payor of benefits.

### Standard of Review

Provident does not dispute that the plan administrator's decision in this case is not entitled to deference. "In cases in which a plan administrator is given no discretionary authority by the plan, review of the plan administrator's decision by the district court—as well as the court of appeals—is *de novo*, with respect to both the plan administrator's interpretation of the plan and the plan administrator's factual findings." *Wilkins v. Baptist Healthcare Sys., Inc*., 150 F.3d 609, 616 (6th Cir. 1998). We therefore review the district court's judgment on Gilewski's claim

*de novo*, applying the same standard of review to the plan administrator's action as the district court, taking a "fresh look" at the administrative record, and according no deference or presumption of correctness to the decisions of either the district court or plan administrator. *Id.*

### Medical Evidence

To succeed in his claim for disability benefits under ERISA, Gilewski must prove by a preponderance of the evidence that he was "disabled," as that term is defined in the policy. *See Tracy v. Pharmacia & Upjohn Absence Payment Plan,* 195 F. App'x 511, 516 n.4 (6th Cir. 2006) (plaintiff bears the burden of proof in an ERISA benefits case). The policy defines "disability" in part to mean that the insured has experienced a "Loss of Time or duties in your occupation." The definition of "Loss of Time or Duties in your occupation" requires that "you are not able to perform one or more of the substantial and material duties of your occupation," or that "you are not able to perform the substantial and material duties of your occupation for as much time as you regularly performed them before you became disabled." Policy at 5, 7. The administrative record demonstrates that every health-care professional agrees that Gilewski suffers from Major Depressive Disorder. The question is whether that condition had stabilized sufficiently as of July 12, 2013, to allow Gilewski to return to his past profession running an automotive supply company. After a careful and comprehensive review of the full administrative record, we find that Gilewski has not established that he is unable to work in a position equivalent to when he was the owner of Radiance Mold and Engineering.

In reaching this conclusion, we look at the medical evidence. "Generally speaking, an administrator may not summarily reject the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006). Administrators, however, are not obligated to accord special deference to

the opinions of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). To that extent, a lack of objective medical evidence upon which to base a treating physician's opinion has been held sufficient reason for an administrator's choice not to credit that opinion. *See, e.g., Boone v. Liberty Life Assur. Co. of Boston*, 161 F. App'x 469, 473 (6th Cir. 2005) (administrator's decision not to credit treating physicians' assessments not arbitrary because the assessments were not supported by objective evidence, as required by the plan document). Provident is not entitled to simply ignore the opinions provided by Gilewski's treating psychiatrist, but it can resolve conflicts between that opinion and the opinions of its own file reviewers or independent examiners if it provides reasons—including a lack of objective evidence from the treating physician—for adopting the alternative opinions that are consistent with its responsibility to provide a full and fair review of the claim. *See Curry v. Eaton Corp.*, 400 F. App'x 51, 55 (6th Cir. 2010); *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 296 (6th Cir. 2005) (There is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination.")

We recognize that depression can be difficult to measure through "objective" tests, but that difficulty does not render us unable to evaluate the medical evidence. The record provides numerous evaluations made by mental-health professionals over a four-year period. There are self-reporting records from the patient collected during examinations, home visits, and in the form of activity logs completed by Gilewski. The medical evidence in the administrative record indicates that depression made it difficult for Gilewski to concentrate, handle stress, remember things, interact with employees and customers or to make decisions. We acknowledge that all the mental health professionals who have evaluated Gilewski since the onset of his illness, both treating and nontreating, have diagnosed major depression. But the records also show that with

therapy and medication, Gilewski has shown consistent improvement in his activity level in the four-year period since he became ill, including participating in regular exercise, taking vacations, "tinkering" in his barn, hunting and fishing, handling chores around the house, including child care, taking care of his own hygiene, and interacting with family and friends appropriately.

Gilewski repeatedly maintains in his briefs on appeal that Dr. Shiener's opinion was "not credited." Dr. Shiener's attending physician statements provided to Provident, however, did not contain any analysis or content to help enlighten or explain in any detail why Dr. Shiener believed Gilewski could not work or what treatment he was providing to move Gilewski toward better mental health. Dr. Shiener submitted photocopies of the exact same statements with only the date changed for over a year: they said simply said that Gilewski was depressed, unable to work and his prognosis was uncertain. Dr. Shiener stopped submitting photocopies of prior statements in the spring of 2013 after Provident asked for an independent examination, but even his later statements provided minimal information. For example, Dr. Shiener changed Gilewski's prognosis from "good" to "guarded" in April 2013 without further explanation. With such abbreviated analyses from Dr. Shiener, we cannot say on review of the administrative record that it was improper of Provident to fail to give controlling weight to Dr. Shiener's opinion.

In addition to a dearth of information from Dr. Shiener, the attending physician statements and reports he did provide were incompatible with Gilewski's self-reported activity level and abilities in 2012 and 2013, as well as with the other medical opinions, including the opinion of Dr. Dudley, who performed an independent medical examination on Gilewski in June 2013, and the file reviews of Dr. Szylk, Provident's in-house psychiatrist, and Dr. Brown, the independent reviewer for the administrative appeal. The nontreating physicians all agreed with

Dr. Shiener's diagnosis of major depressive disorder, but the nontreating physicians believed the condition to be "stabilized" and well-treated with Gilewski's current medications. Dr. Dudley noted that if after four years of treatment Gilewski's condition and prognosis were as poor as Dr. Shiener believed, Gilewski should be receiving more intensive treatment through changed medications, intensive psychotherapy, or even in-patient treatment at a psychiatric facility. Even after Dr. Dudley sent his report to Dr. Shiener, Dr. Shiener gave no indication that he thought a change in treatment was needed at that time.

Dr. Shiener's opinion is also at odds with the earlier opinions of Dr. Guyer and Dr. Roberts who treated Gilewski in 2009 through 2011. Both treating doctors indicated in their treatment notes that Gilewski was improving by 2010, and Dr. Roberts noted in 2011 that Gilewski should be able to return to work within six months. Gilewski himself told Dr. Roberts in 2010 that he was feeling better and was thinking about what he might do as far as future work. We recognize that these reports are not as current as Dr. Shiener's, but without medical records or further explanation from Gilewski, we are left to review an administrative record that shows progress for two years under two doctors followed by apparent setbacks in 2012 and 2013 according to Dr. Shiener's reports. Dr. Shiener notes the tragic death of one of Gilewski's good friends in 2011 and Gilewski's decision to cut back on his medications as reasons for the setback. What the record does not show is why Dr. Shiener did not respond to these setbacks more vigorously if he believed them to so severely compromise Gilewski's progress up to that time.

**Ability to Return to Previous Position**

We also looked to the nature of Gilewski's previous position. See *Elliott*, 473 F.3d at 618 (a decision on a disability benefits claim requires "an application of the relevant evidence to

the occupational standard" because "medical data, without reasoning, cannot produce a logical judgment about a claimant's work ability"). Both parties agree that Gilewski's job as the owner and president of an auto supply company was demanding, stressful and required long hours. Dr. Dudley, the independent psychiatrist who examined Gilewski, was instructed to consider whether Gilewski was disabled from performing the material and substantial duties of his previous occupation as the owner and president of an automotive supply company. Dr. Dudley concluded that Gilewski's Global Assessment of Functioning score of 80 indicated no more than a "slight impairment" in occupational functioning, and he determined that Gilewski did not have any restrictions that would prevent him from returning to his previous position. Gilewski had provided Provident with extensive information about the nature and duties of his occupation. They are not in dispute. Dr. Dudley, and the psychiatrists who reviewed the file, had this information when they determined that Gilewski could return to work with no limitations.

Gilewski disputes this finding and contends that Provident should have provided a job analysis by consulting a vocational expert about his ability to return to his former occupation. Provident maintains it was not required to do so. *See Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 662 (6th Cir. 2013) (collecting cases); *Burge v. Republic Engineered Prods., Inc.,* 432 F. App'x 539, 550 (6th Cir. 2011) ("Republic was also not required to consider vocational evidence, as opposed to medical evidence, in analyzing Burge's claim.") (citing *Douglas v. Gen. Dynamics Long Term Disability Plan*, 43 F. App'x 864, 870 (6th Cir. 2002) (vocational expert not required outside of social security context)). Vocational expert testimony "is the special creature of social security," and has no relevance to long-term disability claims like the one here where the question is whether Gilewski is able to return to his former position based on the medical evidence. *Conley v. Pitney Bowes*, 176 F.3d 1044, 1050 (8th Cir. 1999).

**<u>Conflict of Interest</u>**

Gilewski correctly asserts that Provident has a conflict of interest because of its dual role as both payor of benefits and decisionmaker, and that courts treat this conflict as a factor in reviewing a plan administrator's decision. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). The Supreme Court also noted in *Glenn* that such a conflict "should prove more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision." *Id.* at 117; *accord Judge*, 710 F.3d at 663 ("[T]his court has given greater weight to the conflict-of-interest factor when the claimant 'offers more than conclusory allegations of bias.'") (quoting *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 445 (6th Cir. 2009)). Gilewski has demonstrated no circumstances indicating a need to give the conflict significant weight. Gilewski's conflict argument on appeal centers on his assertion that Dr. Dudley, the independent psychiatrist, "relied" on the summaries written by Provident's in-house psychiatrist, Dr. Szylk. As the independent medical examiner, Dr. Dudley was provided with all the medical records in Gilewski's file, which included treating physician records as well as in-house documents. Our review of Dr. Dudley's report does not show that Dr. Dudley "relied" on Dr. Szylk's summaries. Dr. Dudley conducted his own examination of Gilewski and wrote a comprehensive report. The fact that Dr. Dudley agreed with some of Dr. Szylk's summaries and put them in his report does not demonstrate that Dr. Dudley was not independent and unbiased in reporting on his examination of Gilewski.

In conclusion, reviewing the administrative record and giving no deference to Provident's decision to terminate benefits, we find substantial evidence supports Provident's decision to terminate Gilewski's long-term disability benefits. We affirm the judgment of the district court.