**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 11a0536n.06

Nos. 10-3124, 10-3323

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 03, 2011**

LEONARD GREEN, Clerk

| | |
|---|---|
| LINDA BURGE, | ) |
| | ) ON APPEAL FROM THE |
| Plaintiff-Appellee | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE NORTHERN |
| v. | ) DISTRICT OF OHIO |
| | ) |
| REPUBLIC ENGINEERED PRODUCTS, INC., | ) **OPINION** |
| | ) |
| Defendant-Appellant. | ) |
| _____ | ) |

**Before: KEITH, GIBBONS, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Republic Engineered Products,

Inc. (Republic) appeals the district court's determination on summary judgment that Republic's

denial of disability benefits and 401(k) funds to Plaintiff-Appellee Linda Burge (Burge) was arbitrary

and capricious. Republic also appeals the district court's grant of Burge's motion for attorney's fees

and costs. Because we agree that Republic's decision to deny benefits was not the result of a

deliberate, principled reasoning process, we **AFFIRM** the district court's determination on this issue.

However, rather than grant judgment to Burge, we **REMAND** to the district court with instructions

to remand to Republic for a full and fair inquiry. We **AFFIRM** the district court's decision granting

Burge's motion for attorney's fees and costs.

**I.**

**A.**

Burge was hired by Republic for the position of benefits analyst[1] in 2002. She was covered by the Republic Comprehensive Welfare Benefits Plan (Plan). The Short Term Disability (STD) Plan and Long Term Disability (LTD) Plan are integrated parts of the Plan.[2] Covered employees who are disabled receive benefits under the STD Plan as follows: "100% of Base Salary for the first three (3) months of an employee['s] Disability," less offsets; and under the LTD Plan as follows: "60% of Base Salary following the first three (3) months of an employee['s] disability," less offsets, "payable until the employee is no longer disabled, reaches age 65, or attains the fifth (5th) anniversary from the commencement of Disability commenced after age 60."

---

[1]The "essential physical demands" and the "working environment" of this position were as follows: "[a]bility to see, communicate, hear[,] and utilize electronic communication devices"; "[o]ffice work environment; incumbent occasionally subject to plant working conditions (hazardous, subject to weather and temperature extremes)."

[2]Under the STD Plan, a "disability" is defined as a condition that (1) "prevents a Program Participant from engaging in [her] regular occupation," (2) "for which the STD Program Participant is under the regular care and personal attendance of a Physician for treatment aimed at maximizing such STD Program Participant's recovery and return to work," (3) "during which the STD Program Participant does not engage in any occupation or perform any work for compensation or profit, except in any planned vocational rehabilitation training program approved by the Plan Administrator for such STD Program Participant prior to [her] participation in such program," and (4) "for which the Elimination Period has been completed." The LTD Plan states that a "Disability" "is defined as an illness, injury, impairment or physical or mental condition that involves inpatient care or continuing treatment by a healthcare provider."

On September 20, 2005, Burge slipped and fell in a stairwell while attending a work-related conference. The following day, she was seen by Dr. Paul Willette (Willette), who applied a splint and made the following diagnoses without providing additional commentary: "pain in limb," "depressive disorder NEC," and "fall on stair/step NEC."[3] On September 22, 2005, Burge was examined by Dr. William McCue (McCue), who diagnosed a wrist and elbow sprain and contusion, placed Burge in a short arm thumb spica cast, and recommended that Burge not work until October 3, 2005, when she would be able to perform light-duty tasks. Burge did not return to work on October 3 because she complained that she was still experiencing pain. She did, however, begin working four hours per day doing light-duty work starting from October 11, 2005. Burge's cast was removed on October 20, 2005. At this time, an X-ray confirmed a nondisplaced distal radius fracture without angulation or displacement, and Dr. McCue observed significant right median neuropathy in Burge's right hand and wrist. Dr. McCue prescribed physical therapy and permitted Burge to continue working four hours per day, provided that she wore a splint and used only her left hand.[4]

Burge saw Dr. McCue for follow-up visits through November 2005. On December 1, 2005, Dr. McCue opined that Burge could work eight hours per day, but that she should continue to only

---

[3]Burge also filed a claim for worker's compensation on this day. On September 29, 2005, Republic stated that it would pay Burge "salary continuance in lieu of the state paying worker's compensation indemnity payments."

[4]Communications from Republic indicated that Burge was allowed to "select [which] duties she [would] perform[] with regard to her limitations. Burge was expected to perform the following tasks using only her left hand: "[d]ate stamp[ing] opened annual enrollment materials," "[c]heck[ing] UltiPro to see if changes need[ed] to be made," "[c]heck[ing] off forms received in spreadsheet," "[m]ak[ing] copies of forms received to send back as an acknowledgment," [a]nswer[ing] the phone," and "[r]eview[ing] reports for changes."

use her left hand. On January 5, 2006, Dr. McCue evaluated Burge and observed that she

demonstrated full flexion-extension of the thumb and fingers of both hands with some limitation of

motion in the right wrist. He noted that there was no swelling or discoloration in the hands or wrists.

X-rays showed that the fractures of the radius and ulna had healed. Dr. McCue's notes stated that

Burge did not appear to be anxious or depressed. He observed that Burge had made no appreciable

gains in physical therapy with respect to motion and strength, and that therapy strength testing

showed poor effort with the right and left hand and arm. Dr. McCue extended Burge's physical-

therapy program for an additional three weeks and continued the restriction that she work only with

her left hand through the end of February 2006.

Burge's last day of work at Republic was January 18, 2006. Dr. Shelby Cash (Cash), Burge's

primary-care physician, wrote a note to Republic dated February 1, 2006, stating that Burge was

"unable to work January 23rd-February 28th due to medical condition."[5] Burge saw Dr. Janet Dix

(Dix) on February 2, 2006, claiming that she had difficulty concentrating and had issues with her

self-confidence. Dr. Dix diagnosed Burge with Major Depression Severe and recommended weekly

---

[5]However, Burge's March 24, 2006, workers' compensation report stated that "her private physician took her off work effective 1/25/06," and noted that this decision was "not related to [her] workers comp claim." The report also stated that Burge returned to work with restrictions on October 4, 2005, and she continued to work until January 25, 2006. It is possible that vacation days account for the discrepancy concerning the date of Burge's last day of work.

4

therapy.[6]   Dr. Dix's notes showed that Burge had been taking Celexa for over one year and Wellbutrin since January 24, 2006, for depression.

Dr. McCue saw Burge again on February 16, 2006.  Burge continued to complain of pain in her right hand and wrist.  Dr. McCue noted that Burge had attended physical therapy earlier that day and tests conducted during this session showed that Burge had actually "lost some strength in her hands compared to her initial testing evaluation" and that "[w]hen she [did] the testing for her grip strength with rapid succession, she [was] able to double the strength of her grip in both hands," raising "the question regarding whether she [was] making a valid effort on the exam."  Dr. McCue observed, as he had once before during a November 2005 office visit, that Burge appeared "a bit apprehensive regarding her condition."  X-rays showed a "healed fracture [of the] right distal radius without angulation or displacement."  Dr. McCue discussed his findings with Burge, opining that she had "reached maximum medical improvement [(MMI)]" and that there was no "further therapy, medication or surgical treatment that [he could] recommend that would change her condition."  He did not prohibit Burge from using her right arm, but he did recommend that she have a five-pound lifting restriction for the next six to twelve months.

Burge saw Dr. Alan Wilde (Wilde) for a second opinion regarding her right hand and wrist pain on March 29, 2006.  Dr. Wilde noted that Burge complained of pain in the radial and the ulnar side of the wrist and some paresthesias in all fingers of the right hand when she first awakened in

---

[6]On July 12, 2006, Dr. Dix completed a Medical Recertification Request form stating that Burge was totally disabled from January 2006 until the present due to severe depression, chronic pain, and severe anxiety.

the morning. He observed that Burge "has had similar symptoms in the left hand for approximately 2-3 years."[7] Dr. Wilde related that Burge had complained of "pain with grasping or lifting and even lifting a gallon of milk, brushing her teeth[,] . . . [and] cutting her food." He also noted that, due to her depression following the accident, Burge was taking Wellbutrin and Celexa. Dr. Wilde's physical examination of Burge's hand and wrist was inconclusive, but he observed a narrowing of the lunate triquetrum joint (an issue apparently not related to the right wrist fracture) when reviewing Burge's X-rays from the day of the accident. Dr. Wilde suggested that this issue could be causing Burge's symptoms and referred her to Dr. William Seitz (Seitz).

At Republic's request, on June 26, 2006, Burge saw Dr. Gregg A. Martin (Martin), a rehabilitation psychologist, for an evaluation regarding Burge's entitlement to disability benefits due to her depression.[8] Dr. Martin interviewed Burge and administered a Minnesota Multiphasic Personality Inventory (MMPI) test. According to Dr. Martin, Burge reported that she continued to suffer "chronic significant pain in her injured right wrist and hand." She also stated that she continued to suffer from depression as a result of this injury and said that Republic "did not

---

[7]In 2001, Burge fell on her outstretched left arm and sustained a fracture. She saw Dr. William Seitz a number of times for this issue, and he diagnosed her with "worsening [rotator cuff] impingement, AC joint arthritis, adhesive capsulitis and synovitis involving the left shoulder. . . . [,] signs of TFCC tear, [and] early arthrosis at the DRUJ and the CMC joints of her left hand and wrist" on April 28, 2005. Dr. Seitz recommended that Burge wear a splint and attend physical therapy.

[8]Republic had scheduled an independent medical examination for Burge with Dr. Ira Unger on June 14, 2006, but it cancelled this appointment after apparently speaking with Burge over the telephone. Republic sent Burge a letter on June 12, 2006, stating that the appointment was cancelled and that it was in agreement with Burge that "Dr. William McCue [had] given [her] a five pound lifting restriction and that [she could] perform [her] job duties with that restriction."

adequately modify her duties to reflect her restrictions" and that "she did not receive physical or emotional support" for some of her work duties.

Dr. Martin noted that Burge scored well below her age and education levels on two tests of judgment and reasoning and scored in the severely-impaired range on a test of reasoning in real-life situations. These scores puzzled Dr. Martin, and therefore he "took the additional step of administering a validity measure of judgment and reasoning." Dr. Martin stated that this test is "nationally normed and well-respected for identifying inconsistent and other types of invalid responses. Persons with clinically verified and even significant neurologic dysfunction . . . can still complete this measure in an accurate and valid fashion." According to Dr. Martin, Burge provided an invalid response protocol "indicating either inconsistent effort or a purposeful attempt to perform poorly." The computerized interpretation of Burge's test results stated that "there [was] sufficient evidence to support a conclusion that [Burge] intended to misrepresent herself as impaired on the test," advised that the results of other tests administered at the same time as the validity measure should be interpreted with caution, and noted that the likelihood of Burge "performing this poorly merely due to random chance [was] less than .01%." Dr. Martin observed that these test results supported his subjective evaluation of Burge; during the interview, he felt that she behaved oddly and was "more confused than typical even for severe depression." Therefore, he stated that he could not conclude that Burge was "disabled by depression or any other psychological condition."

Burge saw Dr. Seitz for a follow-up visit on June 29, 2006. Dr. Seitz noted that X-rays showed "healing of the distal radius fracture with slight shortening, impaction and dorsal tilt with

7

positive ulnar variance and some irregularities of the distal radial ulnar joint [(DRUJ)]," and observed that Burge had some "posttraumatic arthritic changes of the" DRUJ, "probable repair of the" triangular fibrocartilage complex (TFCC), "and ulnar carpal abutment syndrome." In light of Burge's persistent symptoms, Dr. Seitz suggested surgical intervention and recommended that Burge not work until January 30, 2007. On July 3, 2006, Burge requested that AultComp, a company that managed her workers' compensation claim, change her physician of record from Dr. McCue to Dr. Seitz. This request was granted. Burge subsequently submitted a request for coverage for the surgery recommended by Dr. Seitz. This request was initially denied on the ground that the surgery was not medically related to the original injury, but it was subsequently granted after Burge appealed this decision and submitted additional evidence.

On July 24, 2006, Burge saw Dr. Sam E. Rajiah (Rajiah) on referral from Dr. Cash. Dr. Rajiah's notes stated that Burge began feeling depressed prior to the accident because she "felt that her boss was not giving her much emotional support. . . . After she had the fracture, the symptoms intensified." Dr. Rajiah stated several times that Burge was "honest." He opined that Burge's depression was "quite debilitating," and diagnosed Burge with Major Depressive Disorder, Recurrent and Generalized Anxiety Disorder. Dr. Rajiah evaluated Burge again on August 7, 2006. Burge reported having symptoms of anxiety and depression and pain in her left and right arms and wrists. Dr. Rajiah observed that, based on their conversation, there was "no element of secondary gain in [Burge's] request for some disability." He opined that Burge was "not capable of returning to work and need[ed] to be in med management for the depression and anxiety symptoms and the pain

8

problems." On August 14, 2006, Burge underwent a head CT scan per Dr. Rajiah's recommendation; the impression was unremarkable.

Given the results of Dr. Martin's examination, Republic asked Burge to undergo a second psychological examination conducted by Dr. Mark G. Tully (Tully). Dr. Tully was asked to determine whether Burge "was suffering from a psychological disorder as a result of her accident of 9/20/05 and, if so, what was the extent of her impairment." When Burge saw Dr. Tully on August 15, 2006, she reported feeling depressed but denied having any mental-health problems prior to the accident, aside from panic attacks, for which she had been taking Celexa for twelve to eighteen months.

Dr. Tully administered the Symptom Checklist-90-R (SCL-90-R) to assess Burge's "symptomology over the week preceding the examination," and the Minnesota Multiphasic Personality-2 (MMPI-2) "to gain further insight into [Burge's] personality functioning." Following the testing, Dr. Tully opined that Burge "approached the MMPI-2 with the intent of significantly magnifying her psychological symptomatology. In fact, her symptom magnification was so extreme that it invalidated her profile of scores." Thus, Dr. Tully concluded that "[t]he data was quite clear that Ms. Burge was not suffering from Major Depressive Disorder" given Burge's attempt to exaggerate her symptoms, rendering a diagnosis regarding Burge's reported symptomatology "indefensible," and Burge "should be able to return to work without restrictions, from a psychological perspective," as she "was able to function adequately in a light duty capacity from 10/06 to 1/06."

Burge also saw Dr. Richard Reichert (Reichert) on August 17, 2006, at Republic's request; Dr. Reichert was to determine whether Republic should provide coverage for the surgery recommended by Dr. Seitz. During the appointment, Burge complained of wrist and thumb pain and occasional tingling in the fingers, and stated that she was unable to lift a gallon of milk or lift a pan to pour while cooking. Dr. Reichert opined that there was evidence of posttraumatic arthritis of the right wrist, as determined by Dr. Seitz, rendering "the request for surgical exploration appropriate." He concluded, however, that Burge was not "totally disabled" with respect to either the injuries arising out of the accident or the posttraumatic arthritis of the DRUJ and a tear of the TFCC of the right wrist. Dr. Reichert stated that Burge was "capable of returning to work with restrictions of limited use of the right wrist and hand. She should also avoid repetitive use of the right hand and wrist. [Burge's] duties are in an office setting, and, therefore, I would expect that she would be capable of performing a significant portion of those duties within the restrictions as written above."

Burge met with Dr. Rajiah on August 30, 2006. Dr. Rajiah opined that Burge's "only problem" was "the ongoing pain in her right wrist and the refusal by her company for her to have surgery," and observed a "significant improvement, psychiatrically." Burge next saw Dr. Rajiah on September 26, 2006. Dr. Rajiah noted that Burge had developed back pain and was taking medication for it. He also reported that Burge had been laid off, but that she was thinking about looking for another job or applying for Social Security benefits even though she wanted to continue working. Meanwhile, after receiving Dr. Tully's report regarding his examination of Burge, Republic sent Burge a letter on September 8, 2006, notifying her that Republic was terminating her

10

disability benefits as of August 15, 2006. Additionally, Republic told Burge that the "position of Benefits Analyst was terminated in March. Therefore, we will now classify you as on layoff status."

On November 21, 2006, Dr. Jack Jones (Jones) was asked to respond to a question posed by the Ohio Bureau of Workers' Compensation (BWC) asking whether Burge's requested period of disability from June 29, 2006, until January 30, 2007, (as recommended by Dr. Seitz) was related to the September 20, 2005 accident. After reviewing the relevant records, Dr. Jones opined that this period of disability did not appear to be appropriate in relation to Burge's accident. He stated that Burge "was capable of working in a light duty capacity as determined by Dr. McCue . . . . She has remained off work since 1-18-06 because of unrelated depression problems. Since apparently no wrist reconstructive surgery has thus far been performed, the requested period of disability does not appear appropriate until after [Burge] actually undergoes the proposed surgery."

On January 2, 2007, Dr. Rajiah submitted a teledictation to the Ohio Rehabilitative Services Commission's Bureau of Disability Determination (BDD),[9] in which he stated that there was no element of secondary gain in Burge's request for disability, that Burge's level of anxiety was high, and that Burge experienced periods of confusion and disorientation. He opined that Burge's disability was "related to her work and the continuing stress because of difficulty in getting proper surgical treatment and also[] the ongoing financial stress," and that because of her physical limitations Burge was not "capable of handling any other jobs at the present time."

---

[9]BDD adjudicates claims for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI).

11

Dr. Seitz saw Burge for a pre-operation check-up on January 3, 2007, and performed Burge's surgery – "distal ulnar resection with reduction of subluxated DRUJ and TFCC, and collateral ligament reconstruction, left wrist" – on January 8, 2007.[10] The DRUJ was examined during surgery and was found to be grossly unstable and the TFCC was found to be torn and degenerated. Dr. Seitz completed a Physician's Report of Work Ability for the BWC on January 22, 2007, stating that Burge would be totally disabled from work from January 8, 2007, until April 2, 2007. Burge saw Dr. Seitz again on January 29, 2007. Dr. Seitz reported that Burge was "delighted with [the] surgical outcome to date."

On February 5, 2007, Dr. Dix wrote a letter to Dr. Tully in which she disagreed with Dr. Tully's conclusions that Burge was not suffering from Major Depressive Disorder and that Burge "should have been able to function at work in a light duty capacity taking into consideration her physical limitations." Dr. Dix stated that she could not explain the results of Dr. Martin's and Dr. Tully's psychological testing, but she "felt that [Burge] was an honest person and . . . had no reason to believe [that Burge] would want to make herself look worse to anyone[,] let alone her employer."

Burge continued to see Dr. Seitz for follow-up visits through April 2007. On March 8, 2007, Dr. Seitz reported that Burge was "having minimal discomfort only 2 months after" surgery and that she had "much improved pronation, supination[,] and overall mobility." Similarly, at an April 2, 2007 check-up, Dr. Seitz noted that Burge was "pleased with [her] progress" and was "doing well."

---

[10]It appears that Dr. Seitz was referring to the right wrist.

On April 16, 2007, Dr. Cindi Hill (Hill) administered a Physical Residual Functional Capacity Assessment (RFC) to Burge on behalf of the Social Security Administration (SSA). The RFC showed that Burge could occasionally lift twenty pounds and frequently lift ten pounds, could stand, sit, and walk for a total of six hours in an eight-hour work day, was limited in her upper extremities (hand and wrist) with respect to her ability to push and pull, could not climb ladders, ropes, or scaffolds or crawl, and was limited in frequent handling and fingering with the right hand. The RFC noted that Burge insisted on a five-pound lifting limit, but was able to lift a gallon of milk, which weighed eight pounds. Additionally, the RFC stated that Burge could write, drive, and care for her contact lenses. Burge was also observed to have small and neat handwriting and to have the ability to write for an extended period of time.

On May 10, 2007, Dr. Michael R. Magoline (Magoline) evaluated Burge's wrist for the BWC. He opined that "[r]estrictions with respect to the right upper extremity would be appropriate. These would include minimal use of the right hand. No repetitive use of the right hand. No lifting greater than 5 lbs. with the right hand." Dr. Magoline stated that Burge had not yet reached MMI because her surgery had taken place less than four months prior, and that he would expect her to reach MMI approximately twelve to sixteen months after surgery.

On July 6, 2007, Dr. Robert G. Kaplan (Kaplan) reviewed Burge's records at Republic's request, which related to Burge's "claim appeal for disability benefits," in order to determine if Burge "had disabling depression as of 8/15/06, and if it was caused by an industrial injury that occurred on 9//20/05." Dr. Kaplan noted that there was "an unusually large number of discrepancies

in []Burge's reporting of her psychological symptoms and their causes as well as indications that she was intentionally fabricating and exaggerating the severity of her psychological symptoms." As a result, Dr. Kaplan opined that (1) "Burge [had] intentionally exaggerated and malingered psychological symptoms and cognitive impairment" and that she was, "at the least, an unreliable reporter of her psychological symptoms and impairments arising from those symptoms and their causes"; (2) Burge had "no mental disorder that was caused or aggravated by the industrial injury of 9/20/05" that "would have prevented her from returning to her former position of employment or engaging in some other form of sustained remunerative employment as of 8/15/06, if not earlier"; and (3) Burge "developed an aggravation of a pre-existing Major Depressive Disorder, Recurrent due to her belief that her employer and supervisors were abusing her when they questioned the legitimacy of her exaggerated difficulties."

Several months after her surgery, Burge was referred for vocational rehabilitation by Dr. Seitz, as the BWC had indicated that she was eligible for this service, but Burge declined this service because she did not "feel medically stable for a return-to-work program." On July 30, 2007, Burge received a letter from AultComp confirming her refusal of vocational rehabilitation and stating that her vocational rehabilitation file would be closed.

On August 24, 2007, Dr. Paul A. Steurer (Steurer) evaluated Burge for the BWC to determine the extent of her disability. Dr. Steurer concluded that Burge had not yet reached MMI, would benefit from vocational rehabilitation, and was "not capable of returning to her form[er] position of employment."

14

**B.**

On February 9, 2006, four and a half months after her injury and a little over three weeks after her last day of work, Burge applied to Republic for disability benefits due to her right-hand and wrist injury and began receiving $2,750.61 in monthly benefits. The following month, on March 13, 2006, Burge received a letter from Republic regarding her disability benefits, which stated that Burge would receive STD benefits of 100% of her base salary for three months and would then receive LTD benefits of 60% of her base salary, less offsets, until she was no longer disabled or until she reached the age of 65. Burge received LTD totaling $4,125.96 from July 1, 2006, until August 15, 2006. On September 11, 2006, Republic sent Burge a letter notifying her that her disability benefits were being terminated based upon the results of Dr. Tully's August 15, 2006, psychological examination, as well as Dr. Martin's earlier psychological examination. This letter stated that "the Plan requires you to be totally disabled in order to receive benefits."

Burge appealed Republic's decision on February 12, 2007, contending that it was erroneous because it solely relied "upon the reports of Dr. Martin and Dr. Tully. . . .[,] subsequent surgery ha[d] been performed to correct a problem that ha[d] existed with []Burge's arm. . . . [,] [and] the letter from Dr. Dix refut[ed] and explain[ed] difficulties that shed much light on the reports of Dr. Martin and Dr. Tully." On July 19, 2007, Republic denied Burge's appeal. Republic's denial letter stated that the Plan defined a "disability" as "a condition that prevents a participant from engaging in his or her regular occupation, for which the participant is under the regular care and personal attendance of a medical doctor or other professional practitioner for treatment aimed at maximizing such

15

participant's recovery and return to work," and noted that because Burge did not meet this definition, it was appropriate to terminate her benefits under the Plan. The letter further stated that Burge had completed the appeal process under the Plan. It also stated that because Burge's disability benefits were terminated in August 2006, she never exceeded the STD period and the LTD Plan was not involved in the appeal.

On August 27, 2007, a little over six weeks after Republic denied her appeal, Burge received a notice from the SSA that she was entitled to monthly disability benefits.[11] Under SSA rules, Burge's date of disability was January 18, 2006, but she was only entitled to benefits from July 2006.

On August 29, 2007, Burge sent a letter to Republic asserting that Republic's July 19, 2007, letter improperly focused only on psychological issues and that Burge was physically unable to carry out her work duties. Republic, in turn, sent Burge a letter on September 12, 2007, explaining that Burge's disability benefits were paid from September 2005 through February 2006 "because of her wrist injury, a physical disability. Starting in February 2006, []Burge was released to work with only weight restrictions by her medical doctor and thereafter disability benefits were based on medicals which stated that she suffered from severe depression." The letter stated that because there was "no dispute" as to Burge's "ability to work taking into account only her wrist, the denial of the claim and the medical record review in the appeal focused only on psychological issues." Further, the letter stated that because Dr. Seitz's treatment records supporting Burge's need to have wrist surgery were dated after Burge's benefits were terminated, they were not part of the record at the time Burge's

___

[11]Burge's application for Social Security disability benefits had previously been denied on August 7, 2006. Burge appealed this denial on August 30, 2006.

benefits were terminated and therefore were not relevant to the determination whether Burge was disabled prior to August 15, 2006. On October 9, 2007, Burge responded to Republic's September 12, 2007, letter, providing information about her Social Security disability benefits award, asserting that any medical records submitted to Republic relating to Burge's wrist condition were relevant as long as they were submitted during the appeal period, and requesting a determination that Burge was vested in her 401(k) Plan.[12]

Burge filed suit against Republic on January 8, 2009, alleging that (1) Republic had "wrongfully and/or arbitrarily and capriciously refused to pay and/or continue" Burge's LTD benefits, in violation of Republic's LTD Plan and 29 U.S.C. § 1132(A) *et seq.*; (2) Burge was "entitled to a determination as to whether she [was] vested under her 401(k) Plan"; and (3) Republic had "failed to, after reopening the long-term disability decision, provide a final letter or decision for [Burge] and further [had] failed to provide a decision letter with regard to vesting under the 401(k)."

On February 18, 2009, Republic sent Burge final letters of decision with respect to her LTD Plan and 401(k) Plan claims. The letter concerning the LTD Plan claim acknowledged that Burge had provided information about her retroactive Social Security disability benefits award, but stated

---

[12]Pursuant to the 401(k) Plan, an employee is always fully vested in her own contributions. However, an employee is not vested in Republic's contributions under the 401(k) Plan, specifically the "Profit-Sharing Contributions," until the employee completes five years of vesting service. Notwithstanding this rule, if the employee is employed by Republic on her "Normal Retirement Date, the date [she] become[s] disabled, or the date [she] die[s]," the employee will be fully vested in these contributions. A determination of disability under the 401(k) Plan requires a showing that the "Participant can no longer continue in the service of [her] employer because of a mental or physical condition that is likely to result in death or is expected to continue for a period of at least six months. A Participant shall be considered Disabled only if the Administrator determines [she] is Disabled based on a written certificate of a physician acceptable to it."

that this award did not change Republic's determination because it was based on a different impairment (wrist) than that alleged under the LTD Plan (depression) and because it was not dispositive of the issue whether Burge was disabled under the LTD Plan. Further, this letter stated that no medical evidence had been submitted to date that would indicate that Burge was disabled due to her wrist between February 2006 and August 2006, and that evidence generated after these dates was "not the same." The letter concerning the 401(k) Plan denied Burge's request to determine that she was disabled for purposes of vesting, stating that "there [was] no medical certificate of a physician that concluded[] during the period that . . . []Burge was still an employee, that []Burge was unable to continue in the service of the company because of a mental or physical condition likely to result in death or expected to continue for a period of at least six months."

Burge and Republic filed cross-summary judgment motions on July 31, 2009. Following a hearing, the district court issued an opinion granting Burge's motion for summary judgment and denying Republic's motion for summary judgment.[13] The district court held that Republic "acted arbitrarily and capriciously by (1) not following a stated, methodical appeal process and inconsistently applying and reverting between the STD plan and the LTD plan; (2) applying a standard of 'total disability' that [did] not appear in either plan; and (3) failing to consider evidence of [Burge's] exacerbated wrist condition." Further, the district court concluded that Burge was entitled to vesting under the 401(k) Plan. Burge then filed a motion for attorney's fees, interest, and

---

[13]Although not specifically stated, we understand the district court's order as awarding benefits to Burge, rather than remanding the case to Republic, as the district court granted Burge's motion for summary judgment, in which she requested an award of disability benefits, without additional commentary.

costs on January 22, 2010, which the district court granted in part (rejecting Burge's request for an additional order pertaining to a Cost of Living Allowance). Republic timely appealed both orders.

## II.

Republic argues that because Burge failed to demonstrate that Republic's decision to deny her benefits was not supported by substantial evidence and indeed failed to show that she had a disability under the Plan, the district court's decision should be reversed in all respects. Burge contends that the district court's decision should be upheld because Republic did not employ a principled, deliberate reasoning process in reviewing the evidence available to it to support its initial and final denial of Burge's benefits, and its denial of Burge's disability benefits, as well as its withholding of 401(k) funds, was not based upon substantial evidence and was arbitrary and capricious.

We review a district court's grant of summary judgment de novo. *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 427 (6th Cir. 2007) (citation omitted). "Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmovant, 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (citations omitted). Because Republic's Plan vested the administrator with discretion to construe its terms, which would include the terms of the STD and LTD Plans, we review the administrator's decision under the deferential arbitrary and capricious standard. *See id.*; *see also Firestone Tire &*

*Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Pursuant to this standard, "we will uphold a plan administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 501 (6th Cir. 2010) (citation omitted).

"Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) (footnote omitted). Here, during the time period spanning February to August 2006, a number of doctors opined that Burge would be able to return to work from a physical perspective following her accident, and at least two doctors determined, after conducting objective tests, that Burge could return to work from a psychiatric perspective. Republic was also not required to consider vocational evidence, as opposed to medical evidence, in analyzing Burge's claim. *See Douglas v. Gen. Dynamics Long Term Disability Plan*, 43 F. App'x 864, 870 (6th Cir. 2002) (citing cases from the Sixth, Eighth Eleventh, and D.C. Circuits). Additionally, Burge's receipt of a Social Security award for her wrist where Republic "(1) encourage[d] [Burge] to apply for Social Security disability payments; (2) financially benefit[ted] from [Burge's] receipt of Social Security; and then (3) fail[ed] to explain why it [took] a position different from the SSA on the question of disability," is merely a factor to be

weighed in favor of a finding that Republic's decision to deny Burge benefits was arbitrary or capricious. *Bennett v. Kemper Nat'l Servs., Inc.* 514 F.3d 547, 554 (6th Cir. 2008).

Nevertheless, the district court correctly determined that Republic's denial of Burge's disability benefits was arbitrary and capricious because Republic's actions demonstrated that this decision was not "the result of a deliberate, principled reasoning process." *Balmert*, 601 F.3d at 501 (citation omitted); *see also Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476, 1484 (11th Cir. 1995) ("A claims administrator's decision is arbitrary and capricious where new requirements for coverage are added to those enumerated in the plan."). Specifically, Republic (1) failed to follow a stated, methodical appeal process and inconsistently applied and reverted between the STD and LTD Plans; (2) applied a standard of "total disability" that did not appear in the Plan; and (3) failed to consider evidence of Burge's actual wrist condition.

Moreover, although a number of doctors stated that Burge could return to her job with some restrictions, Republic never "reasoned from [Burge's] condition to her ability to perform her occupation. There is no statement or discussion of [Burge's] occupational duties or her ability, or inability, to perform them." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 619 (6th Cir. 2006). Republic's September 11, 2006, letter never mentioned any of the restrictions imposed on Burge's use of her right hand and wrist, and Republic omitted all references to Dr. Reichert's restrictions – that Burge should limit her use of her right hand and wrist and avoid repetitive use of her right hand and wrist – from its September 12, 2007, letter despite relying on Dr. Reichert's conclusion that Burge was not "totally disabled."

In *Elliot*, we held that "medical data, without reasoning, cannot produce a logical judgment about a claimant's work ability." *Id.* at 618. There, as here, we noted that the plan administrator's two denial letters contained "mere recitation[s] of medical terminology employed by various physicians in their diagnoses of [the claimant's] condition, without any reasoning as to why those diagnoses would permit her to function in the workplace. A court's decision that merely said 'affirmed' or 'reversed' could not be considered 'reasoned.' Similarly, [the plan administrator] cannot be said to have given a reasoned denial of the [claimant's] claim . . . ." *Id.* at 619. Even assuming that the appropriate definition of disability is that used in the STD Plan, which requires the claimant to be unable to engage in her regular occupation, rather than the LTD Plan, which is broader, none of Republic's benefits denial letters analyzed whether Burge would be able to perform her regular occupation in light of the restrictions imposed on her by the physicians who examined or treated her and in view of her complaints that Republic did not accommodate these restrictions.

**III.**

With respect to the appropriate remedy in this case, we "may either award benefits to the claimant or remand to the plan administrator." *Elliot*, 473 F.3d at 621. Given that there is an issue with the integrity of Republic's decision-making process, and it is unclear whether Burge was entitled to benefits in the first instance, "a remand to the district court with instructions to remand to [Republic] for a full and fair inquiry is the proper remedy here. . . . Such a remedy will allow for a proper determination of whether, in the first instance, [Burge] [was] entitled to . . . disability

benefits." *Id.* at 622 (citation omitted). On remand, the district court should also instruct Republic to conduct a full and fair review of whether Burge was disabled for purposes of the 401(k) Plan.

**IV.**

Republic also argues that if it prevails on its appeal and the district court's decision is reversed, the district court's order granting Burge attorney's fees and costs should also be reversed, as it was based entirely on the district court's grant of summary judgment to Burge. Burge, in turn, claims that "Republic has no grounds for challenging the [district c]ourt's exercise of discretion to award attorney fees, interest[,] and expenses in this case and Republic has supplied none."

We review a district court's award of attorney's fees pursuant to 29 U.S.C. § 1132(g)(1) under the abuse-of-discretion standard. *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005). "[A]n abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Moon v. Unum Provident Corp.*, 461 F.3d 639, 643 (6th Cir. 2006) (citation and internal quotation marks omitted).

To determine whether a district court properly exercised its discretion in awarding fees under 29 U.S.C. § 1132(g)(1), we evaluate five factors:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

23

*Moon*, 461 F.3d at 642 (footnote omitted). In resolving Burge's motion for attorney's fees and costs, the district court determined that the only factor in dispute was the fifth factor – the relative merits of the parties' positions. It reasoned that this factor supported the granting of Burge's motion because Republic "applied inconsistent definitions of disability, and it never applied the standard of disability articulated in the LTD plan"; repeatedly required Burge to show "total disability," which "appear[ed] nowhere in [Republic's] disability plans"; and failed "to issue a final decision [while having] unfettered discretion to review [Burge's] claim, without providing assurances of finality in its decision." The district court reviewed the amount of attorney's fees and costs requested and deemed them reasonable. After weighing the relevant factors, we do not have "the definite and firm conviction that the district court made a clear error of judgment in its conclusion," *id.* at 643 (citation omitted), and therefore we affirm the district court's decision to grant Burge's motion for attorney's fees and costs.

## V.

For the abovementioned reasons, we **AFFIRM** the district court's decisions denying Republic's summary judgment motion and granting Burge's motion for attorney's fees and costs, and **REMAND** the case to the district court with instructions to remand to Republic for a full and fair inquiry consistent with this opinion.

Nos. 10-3124, 10-3323
*Burge v. Republic Engineered Products*

**KEITH, Circuit Judge.** I agree with the majority opinion's decision to affirm the district court's finding that Defendant-Appellant Republic Engineered Products, Inc. arbitrarily and capriciously denied ERISA benefits to Plaintiff-Appellee Linda Burge, but I would affirm the district court's grant of backdated benefits to Burge as an appropriate remedy. Accordingly, I DISSENT-IN-PART from the majority's decision to remand the case back to Republic for a full rehearing.

I agree with the majority that Republic's administrative process was plagued with procedural errors. However, the record demonstrates that Republic manipulated those procedural errors to ensure the substantive denial of benefits to Burge, thus I believe the substantive remedy of backdated benefits is appropriate in this instance. Throughout the appeals process, Burge repeatedly provided Republic with evidence that she was physically unable to carry out her work duties. That Republic refused to consider this evidence, instead focusing solely on evidence of her psychological issues, was arbitrary and capricious. *See Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 512-13 (6th Cir. 2005) (finding Plan administrator acted arbitrarily and capriciously in failing to consider both mental and physical injury when it denied disability benefits in the first instance); *see also Cooper v. Life Ins. Co. of N. America*, 486 F.3d 157, 172 (6th Cir. 2007) ("[Plan administrators] need to properly and fairly evaluate the claim the first time around; otherwise they take the risk of not getting a second chance, except in cases where the adequacy of claimant's proof is reasonably debatable."). On appeal to this court, Republic requests that we remand the case so it may consider the "additional" evidence of Burge's wrist injury and 2007 wrist surgery. However, the administrative record was complete as of the date of Republic's final decision denying Burge

25

disability benefits. *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 374 (6th Cir. 2009). In this instance, Republic issued its final decision on February 18, 2009, after Burge filed suit against Republic in district court. Thus, Republic had the opportunity to consider the "additional" evidence Burge presented to them numerous times throughout the appeals process. Remand is thus an inappropriate remedy because Republic is not entitled to a "second bite" at the proverbial apple. *Id*.

I find further support in affirming the district court's grant of benefits to Burge given the deferential abuse-of-discretion standard of review we apply when considering the district court's choice of remedy in an ERISA action. *Id*. at 375. Because "[t]he administrative record is complete, all facts needed to decide the care are readily apparent, and there is no additional evidence to be derived," *Loan v. Prudential Ins. Co. of America*, 370 F. App'x 592, 598 (6th Cir. 2010) (Clay, J., dissenting), I am not left with the definite and firm conviction that the district court erred in its choice of remedy. *See Shelby*, 581 F.3d at 376 (declaring when an abuse of discretion exists in ERISA claims relating to the district court's grant of attorney fees). Thus, I would affirm the district court's grant of benefits to Burge. For this reason, I would also affirm the district court's finding that Burge is entitled to the vesting of her 401(k) under the Plan. As Republic found her sufficiently "disabled" to receive benefits from February 2006 to August 2006, she met the six-month requirement for employer vesting under the Plan. Thus, given that the district court's choice of remedy is supported by the record, remand is an unnecessary waste of judicial resources.

For the foregoing reasons, I CONCUR in the majority's determination that Republic acted arbitrarily and capriciously in denying Burge disability benefits, but DISSENT-IN-PART as to the remedy because I would affirm the district court's grant of backdated benefits to Burge.