KAREN NELSON MOORE, Circuit Judge,
dissenting in part.
In reviewing Judge’s claim for disability benefits, MetLife twice applied the incorrect disability standard, relied on outdated medical records, discredited the conclusions of Judge’s treating physicians without conducting an independent medical evaluation, and operated under a conflict of interest. The majority nonetheless describes MetLife’s review as a deliberate, principled reasoning process. Such a determination departs from our binding precedent and does not comport with fundamental principles of fairness. MetLife engaged in an arbitrary-and-capricious review of Judge’s claim for benefits, and I therefore respectfully dissent in part. I agree with the majority’s holding that MetLife was not required to obtain a vocational expert in reviewing Judge’s claim and concur in that portion of the majority opinion.
The heart of this appeal concerns the second denial letter that MetLife sent to Judge. The majority rejects Judge’s contention that MetLife never once applied the correct disability standard to Judge’s claim and instead characterizes, the incorrect portions of the second denial letter as “shorthand jargon.” I do not agree with the majority’s characterization, particularly in light of the fact that this “shorthand jargon” happens to be an incorrect disability standard. In fact, it happens to be the very disability standard that MetLife admits it incorrectly used in the initial denial letter. As the majority would have it, I suppose, this is nothing more than mere coincidence. To reach this conclusion, though, defies common sense. MetLife does not dispute that it erred when it applied the following standard in the initial denial letter: “The definition of disability requires that you be totally disabled and unable to work in any capacity and that you would never again be expected to perform any work activities.” A.R. at 170 (First Denial Letter). Yet when this exact language is employed in the second denial letter — “The definition of disability re *665 quires that you be totally disabled and unable to work in any capacity and that you would never again be expected to perform any work activities” — the majority is content to label it “shorthand jargon.”[1] A.R. at 186 (Second Denial Letter). I cannot understand why the majority will not acknowledge that which is painfully obvious — MetLife made a mistake, and it is the kind of mistake that we have previously concluded constitutes arbitrary-and-eapricious review.[2] See Elliott v. Metropolitan Life Ins. Co., 473 F.3d 613, 619 (6th Cir.2006) (“Dr. Menottf s review bears a striking resemblance to MetLife’s first denial letter.”); Burge v. Republic Engineered Prods., Inc., 432 Fed.Appx. 539, 550 (6th Cir.2011) (concluding that Republic’s review was arbitrary and capricious in light of Republic having “applied a standard of ‘total disability’ that did not appear in the Plan”).[3]
As further evidence that MetLife continued to employ the incorrect standard, the second denial letter fails to offer any analysis as to why Judge’s condition would allow him to work in a job for which he is qualified by education, training, or experience. Instead, MetLife assesses Judge’s medical records under a decidedly incorrect standard; specifically, MetLife explains why Judge’s condition would not preclude him from working in any job. When discussing Judge’s medical records, for example, MetLife reasons that Dr. Patel’s July report “does not indicate you have any limitations with sitting, standing, walking, using your arms or hands or are unable to work in any capacity.” A.R. at 186 (Second Denial Letter) (emphasis added). In Elliott, we concluded that a similar analysis was arbitrary and capricious, explaining that “there is no indication that MetLife reasoned from Elliott’s condition to her ability to perform her occupation. There is no statement or discussion of Elliott’s occupational duties or her ability, or inability, to perform them.” 473 F.3d at 619. The same reasoning applies here. There is no indication that MetLife considered Judge’s medical condition under the disability standard that it was required to apply. A letter with such an omission cannot be construed as deliberate and principled.
In addition to the plain language of the letter, MetLife’s internal records confirm that it reviewed Judge’s appeal under the incorrect standard. Diane Englert, the nurse who reviewed Judge’s file, entered *666 the following into the Claim Comments list, a document maintained by MetLife that tracks the progress of each claim: “After careful review of all the clinical information submitted by your treating providers ... it has been determined that the information submitted does not support a severity of functional impairment permanently precluding you from all work activities.” A.R. at 110-11 (Claim Comments List) (emphasis added). As with the letter, these comments mirror those made by the file reviewer who considered Judge’s initial claim: “After careful review of all the clinical information submitted by your treating providers ..., it has been determined that the information submitted is insufficient to support a functional impairment permanently precluding you from all work activities.” Id. at 117 (emphasis added). Despite admitting that it erred in its review of Judge’s initial claim, MetLife’s internal records demonstrate that it continued to apply the incorrect standard throughout the review process.
The record is replete with evidence that MetLife assessed whether Judge would be able to perform any work activities rather than whether he would be able to perform those for which he was qualified by education, training, or experience. Under our binding precedent, a review is arbitrary and capricious when it does not accomplish even the very minimal requirement of evaluating the claim under the requisite disability standard. See, e.g., Jones v. Metropolitan Life Ins. Co., 385 F.3d 654, 665 (6th Cir.2004) (“In this case, MetLife added an eligibility requirement under the guise of interpreting the term ‘accident’ that does not exist in either the Plan documents or federal common law; therefore, MetLife’s interpretation of the Plan is arbitrary and capricious.’ ”). I would therefore reverse on this ground.
I must also object to the majority’s determination that no objective evidence supports Judge’s claim for benefits. Judge’s treating physician classified Judge as totally and permanently disabled and denoted the specific restrictions facing Judge that supported such a classification. A.R. at 127-28 (Deeb Statement). A second physician echoed the specific-restrictions findings, but was not asked whether Judge was totally and permanently disabled. A.R. at 165-66 (Harber Statement). The majority sets these opinions aside, reasoning that they should be discounted because the physicians merely checked boxes on forms without further elaboration. The majority fails to point out, though, that Judge’s physicians submitted the form that MetLife provides to its claimants for the purpose of filing a claim of total and permanent disability. In fact, the “Instructions for Completing Group Life Insurance Statement of Review” indicate that the employee must “[g]ive the Attending Physician Statement to your treating physician for completion.” A.R. at 122 (Instructions). There is no instruction requiring a claimant to provide an additional statement from his physician that explains why he filled out the form in the manner that he did, and there is not sufficient space on the form allocated for the physician to do so.[4] Id. Judge gave the MetLife forms to his two treating physicians, and those two physicians filled out the forms in their entirety. It is unreasonable for MetLife to provide forms requiring that a physician check boxes indicating the restrictions of *667 his patient and then subsequently to deny that patient’s claim because his physician failed to explain his reasoning behind checking certain boxes.
What I find to be even more confounding is MetLife’s and the majority’s reliance on outdated medical records to support their determination that the most recent reports of two physicians are in conflict with the medical record as a whole. Although MetLife and the majority are correct that in April 2010, less than one month after Judge’s surgery, Deeb remarked in a post-operative report that Judge was “actually doing well” and was “awake, alert, oriented, and neurologically intact,” I cannot understand how these comments are relevant to Judge’s ability to return to work eight months later, let alone how they would require us to discount the final opinions of the two physicians responsible for directing Judge’s recovery. A.R. at 141 (Deeb Letter). The same can be said for the July 2010 report. It is unremarkable that a report midway through Judge’s recovery period would note that his condition had improved since surgery and was likely to continue to improve as he completed the remainder of his physical therapy. A.R. at 139-40 (Patel Letter). As we explained in Elliott, “logically speaking, evidence of an improvement, without a starting or ending point, does not help answer the question of whether an individual can perform her occupation. ‘Getting better,’ without more, does not equal ‘able to work.’ ” 473 F.3d at 620.
Likewise, both MetLife and the majority consider it a telling omission that the July 2010 report did not include restrictions on sitting, standing, or walking. Given that the July 2010 report, as labeled by the majority, is nothing more than a letter sent by one physician to another, I do not find such an omission significant. A.R. at 139-40 (Patel Letter). "Unlike the October and December 2010 reports, this letter does not include a standardized form that requires the physician to denote specific restrictions. Id. Rather, the letter is a communication between Judge’s physicians focused largely on the condition of his aortic valve. Id. The omission of these specific restrictions is thus not indicative of a sudden or unexplained change in opinion by either physician, as MetLife and the majority assert. In sum, I do not find these reasons — statements taken out of context from outdated medical records and a finding that MetLife’s form is inadequate — convincing as a basis to deny benefits. An unadulterated review of the evidence makes clear that “MetLife did not rely on an application of the relevant evidence to the occupational standard when it denied [Judge’s] claim initially and on internal appeal,” and I would therefore reverse. Elliott, 473 F.3d at 618.
“While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator’s decisions only for the purpose of rubber stamping those decisions.” Helfman v. GE Grp. Life Assurance Co., 573 F.3d 383, 396 (6th Cir.2009) (internal quotation marks omitted). Where, as here, a claim for disability benefits focuses on outdated medical statements and is reviewed under an incorrect disability standard, all while operating under a conflict of interest, that review is arbitrary and capricious. Having determined that MetLife engaged in an arbitrary-and-capricious review, I would remand “to MetLife for a full and fair inquiry.” Elliott, 473 F.3d at 622. I therefore respectfully dissent.

.There are two additional instances of such parity in the denial letters. In the initial denial letter, MetLife states that "it has been determined that the information submitted is insufficient to support a functional impairment permanently precluding you from all work activities,” and "there is insufficient clinical evidence of a severity of functional impairment that would preclude your ability to return to work.” A.R. at 169-70 (First Denial Letter). In the second denial letter, MetLife similarly asserts that "it has been determined that the information submitted does not support a severity of functional impairment permanently precluding you from all work activities,” and “there is insufficient clinical evidence of a severity of functional impairment that would preclude your ability to return to work.” A.R. at 185-86 (Second Denial Letter).

. Contrary to the majority’s suggestion, Kalish v. Liberty Mutual/Liberty Life Assurance Co., 419 F.3d 501 (6th Cir.2005), does not rebut this point. In fact, the section of Kalish cited by the majority concludes as follows: "the fact that Kalish might be capable of sedentary work cannot be a rational basis for finding that he was not disabled, given that his former occupation required him to walk, stand, and reach for several hours a day.” Id. at 507. Ultimately, we awarded benefits to Kalish. Id. at 513.

. The majority’s reliance on Cook v. Prudential Insurance Co., 494 Fed.Appx. 599 (6th Cir.2012), an unpublished Sixth Circuit case concerning whether a denial letter must address every physician opinion in the record, is misplaced. Elliott and Burge squarely address the issue at hand.

. I disagree with the majority’s characterization of the physician forms as providing space for "narrative responses.” Although some space is allocated for comments, the most that a physician could write in the quarter of an inch reserved for this purpose is no more than a short sentence. In any event, both physicians made notations in the limited space available in response to the questions on the MetLife forms rattled off by the majority. The forms were thus completed in their entirety.