NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0130n.06

Case No. 13-1911

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 13, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KYLE D. KENNARD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| MEANS INDUSTRIES, INCORPORATED, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: MOORE and COOK, Circuit Judges; GWIN, District Judge.[*]

COOK, Circuit Judge.   Kyle Kennard appeals the adverse judgment on his claim to disability retirement benefits from his former employer under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).   Finding the employer's decision to deny benefits arbitrary and capricious, we reverse.

I.

Kennard operated machines for Means Industries, Inc. until 1990 when he inhaled fumes from a chemical spill, severely injuring his lungs and rendering him ultra-sensitive to noxious

_____

[*] The Honorable James Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

fumes. As a result, his treating physician imposed a lifelong restriction that he work only in a clean-air environment. Means provided Kennard a clean-air environment to perform clerical work from March 1992 until 2006. But Means could only do so much; though it warned other employees in Kennard's work area against wearing perfume or lighting candles, various fumes would shorten Kennard's breath and require him to leave work. Kennard stopped working in 2006.

That same year, Kennard successfully applied for disability benefits from the Social Security Administration ("SSA"). According to the SSA's written decision, medical evidence showed that "even extremely low levels of airborne dusts, mists, fumes, vapors, perfumes, cleaning fluids, etc." gave Kennard "severe cough variant asthma and angiodema." The SSA record included (1) an opinion from a treating physician that Kennard "was totally and permanently disabled from employment" and (2) a vocational expert testifying that, based on Kennard's pulmonary restrictions and age, education, and work experience, "there are no jobs in the national economy that [he] could perform." The administrative law judge, applying SSA's standard for disability, found Kennard unable to "engage in any substantial gainful activity."

SSA decision in hand, Kennard next sought disability retirement benefits under Means's ERISA-governed group insurance policy (the "Plan"). The Plan entitles an employee to benefits "if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit, and which condition constitutes total disability under the federal Social Security Act." Means's plan further conditions benefits on an assessment by its chosen physician that the disability be permanent.

Means sent Kennard to be examined by two physicians to determine his qualification for the disability retirement benefit. The first physician, Dr. Michael Holda, examined Kennard's back for the effects of a degenerative disc disease unrelated to the lung disease and reported:

> Based on today's examination, I would recommend that [Kennard] be restricted from repetitive bending and twisting at the waist and lifting over 25 pounds. I would recommend no prolonged sitting or standing.

The second physician, Dr. Gerald Levinson, examined Kennard's lungs and reported:

> [Kennard] is employable as long as he could be guaranteed that he would be placed in an absolute clean air environment with absolutely no noxious fumes or inhalants, as he is extremely sensitive to this. If that criteria could be met, then he could be employable in a clerical position (this was not the case at his usual and customary employment place), however, if not then he would be considered medically and permanently disabled.

With these exam results, Means's Plan Administrator denied Kennard's request for benefits in a February 2010 letter. The administrator's decision cited only the above findings and concluded, without discussion, that "[o]n the basis of your recent medical examination and in accordance with Plan terms, we have determined that you are not permanently disabled within the meaning of the plan."

Kennard then filed a federal ERISA complaint seeking to enforce his rights under the Plan. The district court granted Means's motion to affirm the administrator's decision and denied Kennard's motion to reverse it, "[i]n light of the consistent assessments that Kennard was capable of sedentary work in a clean-air environment."

II.

Though acknowledging that Kennard faces a high burden to convince this court to disturb the administrator's decision, we determine that he carries that burden. A claimant operating under a plan that grants the administrator decisional discretion must show that the administrator's judgment was "arbitrary and capricious." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111−15 (1989); *Judge v. Metro. Life Ins. Co.,* 710 F.3d 651, 657 (6th Cir. 2013). This court nevertheless must ensure that the administrator "can offer a reasoned explanation, based on the evidence, for its judgment that a claimant was not 'disabled' within the plan's terms," *Elliot v. Metro. Life Ins. Co.,* 473 F.3d 613, 617 (6th Cir. 2006), eschewing the "rubber stamp" label, *see Schwalm v. Guardian Life Ins. Co. of Am.,* 626 F.3d 299, 308 (6th Cir. 2010).

Upon a close reading of the medical reports, we reject the district court's conclusion that those reports support the administrator's decision that Kennard can "engag[e] in any occupation or employment." Bare recitations of "medical data, without reasoning, cannot produce a logical judgment about a claimant's work ability." *Elliot,* 473 F.3d at 617; *Burge v. Republic Engineered Prods.,* 432 F. App'x 539, 551 (6th Cir. 2011). Beginning with Dr. Holda's report, no explanation supports why it—recording measurements of Kennard's postural functioning—establishes that Kennard can work with his particular and severe lung disease.

Likewise, the plan administrator offered no explanation why Dr. Levinson's report—opining that Kennard can work in an "absolute clean-air environment" without describing what that means in terms of a real American workplace—supports denial of benefits. *See McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 170–71 (6th Cir. 2003) (rejecting reliance on

report that noted that severely depressed claimant "might be able to return to work in a very low stress environment on a limited trial basis"); *Burge,* 432 F. App'x at 551 (same for reports that noted that claimant "could return to her job with some restrictions" due to major depression and a hand injury).

A valid denial of benefits premised on Dr. Levinson's opinion would need to include evidence of the existence of absolute-clean-air jobs available to Kennard. The SSA found (and Means does not dispute) that "there are no jobs in the national economy that Kennard could perform." (A.R. 106.) Though the Plan Administrator was not required to seek out vocational evidence, *see Judge*, 710 F.3d at 662–63, or to apply the *SSA's* legal standard for disability, *see Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003), Means's administrator needed to ground its decision on a reasoned explanation. In failing to tackle the implicit non-existence of jobs compliant with the strict condition Dr. Levinson prescribed, the Plan Administrator's decision that Kennard can work is not "the result of a detailed, principled reasoning process and . . . supported by substantial evidence." *Elliot*, 473 F.3d at 617.

Moreover, to the extent that the administrator interpreted the Plan language—requiring that the claimant's disability prevents him "from engaging in any occupation or employment for remuneration or profit"—to include a job that exists only in theory, that interpretation is in error. We rejected a hyper-literal interpretation of similar language in *VanderKlok v. Provident Life and Accident Insurance Company*, holding that a requirement that the claimant be "prevented from engaging in every business or occupation" excluded "nominal employment, such as selling peanuts or pencils." 956 F.2d 610, 614–15 (6th Cir. 1992). Just as "every business or

occupation" does not include literally every form of earning money, "any occupation or employment" also does not include jobs that exist only hypothetically.

Because "there [is] no evidence in the record to support a termination or denial of benefits, an award of benefits is appropriate without remand to the plan administrator," *Shelby Cnty. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 373 (6th Cir. 2009) (internal alterations omitted), particularly in the absence of Means requesting an opportunity to reconsider Kennard's application. We therefore remand the case to the district court with instructions to award Kennard disability retirement benefits, retroactive to the date on which they accrued under the Plan, and to consider his request for attorney fees and costs under 29 U.S.C. § 1132(g)(1).

III.

We REVERSE the judgment of the district court and REMAND for proceedings consistent with this opinion.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** The denial-of-benefits letter fails to provide a reasoned explanation for the denial that is grounded in the evidence in the administrative record. However, because I do not agree that Kennard is clearly entitled to disability benefits, I respectfully dissent.

I agree with the majority that Dr. Levinson's medical conclusion was conditional: either Kennard was not disabled if a clean-air environment job existed, or he was disabled if no such job was available. Maj. Op. at 5. By determining that Kennard was not disabled, the plan administrator made a factual determination that a job existed that Kennard could perform, or interpreted the plan not to require that a job actually exist that Kennard could perform, or both. Because the denial-of-benefits letter simply states the definition of "permanently disabled" under the plan and then quotes the medical conclusions of Dr. Holda and Dr. Levinson, without connecting the evidence to the definition or explaining how the administrator came to the conclusion that Kennard is not disabled, we are left to guess at the reason for the denial of benefits. This failure to explain the factual and interpretive basis for the denial of benefits means that the denial is not "the result of a deliberate, principled reasoning process and . . . supported by substantial evidence." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006) (internal quotation marks omitted).[†]

---

[†]Whether the decision provided a reasoned explanation of the basis for the denial overlaps with Kennard's claim that the administrator violated ERISA procedural requirements. ERISA requires a denial of benefits to "set[] forth the specific reasons for such denial, written in a manner calculated to be understood by the participant[.]" 29 U.S.C. § 1133(1). ERISA also requires the plan to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). This includes "[p]rovid[ing] claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits," 29 C.F.R. § 2560.503-1(h)(2)(ii), and "[p]rovid[ing] for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination," 29 C.F.R. § 2560.503-1(h)(2)(iv). Kennard claimed that the plan failed to comply with the notice of denial and right to appeal provisions. The district court concluded that Kennard

However, for this court to award benefits to a claimant, the claimant must have been "denied benefits to which he was clearly entitled." *Id.* at 622 (quoting *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31 (1st Cir. 2005)). I cannot agree with the majority that Kennard is "clearly entitled" to benefits. The majority states that "[t]he SSA found (and Means does not dispute) that 'there are no jobs in the national economy that Kennard could perform.'" Maj. Op. at 5 (quoting R. 49 (Social Security Decision at A.R. 105–06) (Page ID# 1892)). This statement lacks important context; it is excerpted from a summary of the SSA hearing, where the Administrative Law Judge and the vocational expert addressed "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that *given all of these factors* there are no jobs in the national economy that the individual could perform." R. 49 (Social Security Dec. at A.R. 105–06) (Page ID# 1891–92) (emphasis added). Thus, the SSA did not find that there are "no jobs" that Kennard can perform; rather, the SSA found that when accounting for the SSA factors, there are no jobs that Kennard can perform. Because Means Industries' plan does not require the administrator to consider the SSA factors in determining whether a claimant is permanently disabled, this is an important distinction. There is no other evidence in the record that suggests that even if the SSA factors were not accounted for, there would still not be jobs that Kennard could perform. Because the record is devoid of evidence that there are, or are not, jobs that Kennard can perform, I cannot conclude that Kennard is clearly entitled to an award of benefits. Therefore, rather than award benefits, I would remand the case to the plan administrator for further consideration and fact-finding, if necessary. *See Javery v. Lucent*

---

waived these arguments. Because I would remand the case to the plan administrator due to the failure to provide a reasoned explanation based on substantial evidence, I decline to address these claims at this time.

*Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Employees*, --F.3d--, No. 12-3834, 2014 WL 349741 at *12 (6th Cir. Feb. 3, 2014) (remanding for further-fact-finding); *Daft v. Advest, Inc.*, 658 F.3d 583, 595 (6th Cir. 2011) (remanding because "the problem is with the integrity of [the plan's] decision-making process").

Because the administrative record does not support a determination that Kennard is "clearly entitled" to benefits, but that the denial-of-benefits letter lacks a reasoned explanation, I respectfully dissent from the majority opinion, and would REVERSE the judgment of the district court and REMAND this case so that the plan administrator can undertake further proceedings consistent with this opinion and the ERISA procedural requirements.